ALEX HENSLEY, FATHER; CHRISTINE A. HENSLEY, MOTHER; ALEX HENSLEY, GUARDIAN AD LITEM FOR CYNTHIA GAYLE HENSLEY, SISTER, AND CHRISTOPHER DAVID HENSLEY, BROTHER OF DALE BRISCOE HENSLEY, DECEASED v. CASWELL ACTION COMMITTEE, INC., MARYLAND CASUALTY COMPANY

No. 15

(Filed 5 February 1979)

1. **Master and Servant § 55.5— workmen's compensation—death by drowning—accident arising out of and in the course of employment**

   The death of a fourteen-year-old employee of a sanitary district by drowning while he was attempting to wade across a reservoir to complete his work of cutting weeds on the other side arose out of and in the course of his employment, although he had received general instructions at an earlier time not to go into the water, where the place at which he stepped into the water was shallow and the danger was not obvious, and decedent's actions were thus not so extreme as to break the causal connection between his employment and his death.

2. **Master and Servant § 94.4— scope of hearing for further testimony**

   Where the Industrial Commission remanded a workmen's compensation case for the taking of further testimony as to average weekly wage, and the notice of hearing stated that the purpose of the further hearing was to take testimony "bearing on the question of the rate at which compensation shall be paid," the hearing commissioner on remand properly excluded evidence on the issue of compensability and properly limited the testimony to matters relating to wage rates.

3. **Master and Servant § 71.1— workmen's compensation—death of minor employee—computation of average weekly wage**

   Under G.S. 97-2(5), compensation for the death of a minor employee must be based on the average weekly wage of adults employed in a similar class of work by the same employee to which decedent would probably have been promoted had he not been killed if such method can be used, and it is only when

such method cannot be used that compensation may be based upon a wage sufficient to yield the maximum weekly compensation benefit.

Justice BROCK did not participate in the consideration or decision of this case.

APPEAL by plaintiffs pursuant to G.S. 7A-30(2) from a decision of the Court of Appeals, reported at 35 N.C. App. 544, 241 S.E. 2d 852 (1978), reversing an award by the Industrial Commission.

*Blackwell & Farmer, by R. Lee Farmer, Attorneys for plaintiff appellants.*

*Johnson, Patterson, Dilthy & Clay, by I. Edward Johnson, Attorneys for defendant appellees.*

EXUM, Justice.

The deceased, a boy of 14 years, drowned in the Yanceyville Reservoir while on the job he was hired to do by defendant Caswell Action Committee, Inc., after being generally instructed by his supervisor not to go in the water. The Court of Appeals held that his death was not compensable. We reverse. We also conclude that the Deputy Commissioner who heard the case on remand from the Industrial Commission properly limited the hearing to testimony concerning wage rates. Finally we conclude the Industrial Commission erred in its determination of the average weekly wage to be used in computing benefits under G.S. 97-2(5), and we modify its award accordingly.

Decedent, Dale Briscoe Hensley, was employed by defendant Caswell Action Committee, Inc., in June of 1975. He was assigned to work for the Caswell Sanitation District under the supervision of Mr. Aaron Wilson. Decedent was 14 years old. Working with him were two other boys, James Alexander Long, age 15, and Robert A. Scott, age 17. Their tasks included cutting weeds on the banks of the Yanceyville Reservoir. Wilson had given them general instructions that while they were cutting the weeds they should not go into the water.

On 30 June 1975 the three boys had almost worked their way around the reservoir. About noon they noticed some growth they had missed on the other side. Decedent and Long, instead of walk-

ing the long way around the dam, waded toward the spot across the reservoir, wearing their work clothes and boots and carrying their tools. Scott refused to join them in wading across. Both decedent and Long stepped into a deep hole, apparently the creek bed that led out of the reservoir. Long was able to get back to safety, but decedent drowned.

Decedent's next of kin subsequently sought to recover against defendants under the Workmen's Compensation Act. The case first came to be heard on 19 January 1976 before Deputy Commissioner Roney, who found decedent's death to be compensable and set decedent's average weekly wage for the purpose of calculating benefits at $120. At defendants' request, the Indsutrial Commission remanded the case for the taking of further testimony. A second hearing was held before Deputy Commissioner Denson who also found decedent's death to be compensable but set the average weekly wage at $100. The Industrial Commission adopted her decision in all respects except for the average weekly wage, which it set at $120. The Court of Appeals reversed the award of the Industrial Commission, finding that decedent's death was not compensable.

[1] The first, and most important, issue before us is whether decedent's death was a result of an accident arising out of and in the course of employment. This is the basic inquiry which must be satisfied before recovery can be had for any injury under the Workmen's Compensation Act. See G.S. 97-2(6); "Workmen's Compensation Law," Survey of Developments in North Carolina Law, 1977, 56 N.C.L. Rev. 1166-68 (1978). An "accident" is "an unlooked for and untoward event which is not expected or designed by the injured employee." *Harding v. Thomas & Howard Co.,* 256 N.C. 427, 428, 124 S.E. 2d 109, 110-11 (1962). There can be no doubt that decedent's death by drowning was an "accident" in this sense. "The words 'in the course of the employment' . . . refer to the time, place and circumstances under which an accidental injury occurs; the phrase 'arising out of the employment' refers to the origin or cause of the accidental injury." *Robbins v. Nicholson,* 281 N.C. 234, 238, 188 S.E. 2d 350, 353 (1972). We have little difficulty holding that decedent's death occurred "in the course of the employment." Decedent at the time of his death was on the job and was engaged in the process of moving from one point to another on the work site to continue his task.

The more difficult question is whether decedent's death arose out of his employment. Defendants rely on several cases in which employees were denied recovery under the Workmen's Compensation Act because they disobeyed their employers' directives in such a fashion that the causal connection between employment and injury was broken. The Court of Appeals relied on this line of cases in reversing the Industrial Commission. We think these cases are distinguishable and hold that decedent's death did arise out of his employment.

In *Teague v. Atlantic Co.*, 213 N.C. 546, 196 S.E. 875 (1938) (per curiam), decedent was killed when he attempted to ride a conveyor belt from one floor to another instead of taking the stairs. He had done so before, been reprimanded by his supervisors and positively forbidden to do so again. Among the findings of the Industrial Commission was the following: "The employee Teague's attempt to ride the empty crate conveyor from the basement to the first floor was an attempt either for his own personal convenience or for the thrill of performing a hazardous feat; to do an obviously dangerous thing." *Id.* at 547, 196 S.E. at 875. On these facts this Court affirmed a ruling by the Industrial Commission that there was no causal connection between the employment and the injury.

In *Morrow v. Highway Commission*, 214 N.C. 835, 199 S.E. 265 (1938) (per curiam), decedent was engaged in painting a bridge over the Catawba River and dropped his paint brush in the river. "Something was said about going into the water to recover the brush, and the foreman told the deceased not to do so. In violation of this instruction deceased pulled off his clothing, went into the river for the purpose of recovering the paint brush, and was drowned." *Id.* at 835, 199 S.E. at 266. The Industrial Commission concluded that decedent's death did not arise out of his employment, and this Court affirmed.

In *Taylor v. Dixon*, 251 N.C. 304, 111 S.E. 2d 181 (1959), plaintiff sought to recover for injuries sustained to his leg when a tractor turned over on him. Defendants argued that he should not recover because his injuries did not arise out of his employment. The evidence showed that plaintiff was hired to run a power saw. There was testimony that when he got on the tractor he was told to get off and replied that "he was going to drive the damn trac-

tor that day." *Id.* at 304, 111 S.E. 2d at 182. When told he was going to hurt himself the way he was driving the tractor, he said "Old man, I will get down and whip your *   *   * if you don't hush up. I know what I am doing." *Id.* The Industrial Commission failed or refused to find facts in relation to the defense raised by this evidence. This Court remanded the case for reconsideration because of this procedural failing. As we read the decision, no opinion was expressed on the merits.

[1]   Of the cases relied on by defendants, then, *Taylor* actually deals with procedural rather than substantive matters; *Teague* involved dangerous thrill-seeking completely unrelated to the employment; and *Morrow* involved the performance of an obviously dangerous act in the face of an immediate and specific order not to do that very act. While decedent's actions in this case had the same unfortunate result as the actions in *Teague* and *Morrow,* they were not so extreme as to break the causal connection between his employment and his death. Decedent was a 14 year old boy working without immediate adult supervision. He had received only general instructions at some undetermined earlier time not to go in the water. He was not engaged in thrill-seeking unrelated to his employment, nor was the danger obvious. The place where he and Long stepped in was shallow and they could see the bottom. He was proceeding from his work on one side of the reservoir to complete his work on the other side.

We think this case is more akin to *Hartley v. Prison Department,* 258 N.C. 287, 128 S.E. 2d 598 (1962). Plaintiff in *Hartley* was a prison guard. In the course of his duties he was going to relieve another guard in a tower. Instead of walking some 300 feet to a gate, he took a short cut by climbing over a fence, fell and was injured. The superintendent of the prison testifed that it was against the rules to climb over the fence, although there was testimony that employees had done so before. The Industrial Commission entered an award granting compensation, and this Court, in an opinion by Justice Higgins, affirmed. Justice Higgins' conclusion in the case fits almost perfectly with our conclusion here:

"The essence of the story in this case may be told in few words: Usually the idea of a short cut is attractive. Sometimes it is dangerous. To follow [defendant's] contention

would require us to hold that contributory negligence in this case is a complete defense. Our cases construing the [Workmen's Compensation] Act hold to the contrary." *Id.* at 291, 128 S.E. 2d at 601.

The Industrial Commisison was correct in deciding that decedent's death was a result of an accident arising out of and in the course of his employment.

[2]    The next issue is whether Deputy Commissioner Denson improperly limited testimony before her to matters relating to wage rates. At the first hearing before Deputy Commissioner Roney defendants offered no evidence as to the average weekly wage because they mistakenly thought the matter was settled by a stipulation. They asked to be allowed to put in more evidence on this question, and the Industrial Commission remanded for that purpose. The notice of hearing issued by the Commission read as follows:

"SUBJECT OF HEARING

To take such testimony as either side desires to offer *bearing on the question of the rate at which compensation shall be paid* as provided under GS 97-2(5) in the event compensability is ultimately found herein." (Emphasis supplied.)

Defendants sought to introduce additional evidence on the issue of compensability. To receive such evidence was not the purpose of this hearing, and Deputy Commissioner Denson acted correctly in excluding it.

[3]    The final issue is whether the Commission erred in setting the average weekly wage for purposes of determining compensation. It was stipulated that decedent made $40.10 per week. There was uncontradicted evidence that adults employed as decedent was employed could make up to $84 per week. The Industrial Commission set decedent's average weekly wage as follows:

"Decedent's average weekly wage shall be calculated upon a wage sufficient to yield the maximum weekly compensation benefits which was $120.00 on the date of the accident. This will produce a compensation rate of $80.00 per week."

Computation of the average weekly wage of an injured minor employee is controlled by G.S. 97-2(5), which states:

"Where a minor employee, under the age of 18 years, sustains a permanent disability or dies leaving dependents surviving, the compensation payable for permanent disability or death shall be calculated, *first*, upon the average weekly wage paid to adult employees employed by the same employer at the time of the accident in a similar or like class of work which the injured minor employee would probably have been promoted to if not injured, or, *second*, upon a wage sufficient to yield the maximum weekly compensation benefit." (Emphasis supplied.)

We read this statute as establishing a clear order of preference. When the first method of compensation *can* be used, it *must* be used. There was uncontradicted evidence concerning the average weekly wage of adults employed in a similar class of work by the same employer to which decedent would probably have been promoted had he not been killed. That wage was $84 per week. Under G.S. 97-38, the award to decedent's next of kin should have been for 66⅔ percent of that wage, or $56, paid for 400 weeks from the date of decedent's death.

The decision of the Court of Appeals is reversed. The case is remanded to that court for further remand to the Industrial Commission with directions to modify its award in accordance with this opinion.

Reversed and remanded.

Justice BROCK did not participate in the consideration or decision of this case.