MELVIN WILLIAMS v. HYDRO PRINT, INC. AND INDIANA LUMBERMENS
MUTUAL INSURANCE COMPANY

No. 8210IC640

(Filed 15 November 1983)

**Master and Servant § 60.3— workers' compensation—injury during rest break**

Plaintiff's injury by accident during a regularly scheduled rest break arose out of and in the course of his employment where plaintiff was inside the enclosed backyard of the employer's plant with 30-40 other employees; the employees were not permitted to leave the employer's premises during rest breaks without permission from the supervisor; a spur railroad track ran through the yard; plaintiff was standing with two other men about 30 feet from the track during daylight hours when one of the men called their attention to a glittering object on the track; plaintiff started to run with the other two men in the direction of the glittering object because he thought it might be money; plaintiff stumbled when his foot caught on the end of one of the railroad ties and his left knee struck the track as he went down; plaintiff suffered a fractured tibia and fibula of the left leg; there were no rules or regulations prohibiting running on the employer's premises; and every day some of the employees would run to the time clock at the end of the shift to see who could get there first.

APPEAL by defendants from opinion and award of the North Carolina Industrial Commission filed 15 April 1982. Heard in the Court of Appeals 22 April 1983.

Defendants appeal from an award of workers' compensation benefits to plaintiff, Melvin Williams, for an injury to his left leg and knee sustained while he was on a scheduled 15 minute rest

1

period in the fenced-in backyard of the defendant Hydro Print, Inc.'s plant.

*John B. Whitley and George C. Collie, for defendant appellant.*

*Justice and Parnell, by James F. Justice, for plaintiff appellee.*

JOHNSON, Judge.

The question presented for review is whether the Industrial Commission correctly found and concluded that Melvin Williams' injury by accident arose out of and in the course of his employment. For the reasons set forth below, we answer the question in the affirmative.

The only injury which is compensable under the Workers' Compensation Act is an injury "by accident arising out of and in the course of the employment." G.S. 97-2(6). The determination of whether an accident arises out of and in the course of employment is a mixed question of law and fact, and the appellate court may review the record to determine if the findings and conclusions of the Industrial Commission are supported by sufficient evidence. G.S. 97-86; *Gallimore v. Marilyn's Shoes,* 292 N.C. 399, 233 S.E. 2d 529 (1977).

The uncontradicted evidence tended to show that the plaintiff was a 45 year old laborer with a 7th grade education. He had been employed by the defendant, Hydro Print, Inc., since February, 1980. Plaintiff's duties were to load and maintain a certain machine in the employer's plant, and his shift involved working from 3:45 p.m. to 3:00 a.m. It was the defendant employer's practice on plaintiff's shift to have a 10 or 15 minute rest or relaxation break between 7:00 and 7:15 p.m., to have a 45 minute lunch break sometime later and then have another 10 or 15 minute rest break sometime later than that.

Plaintiff was injured at 7:10 p.m. on 22 May 1980, during the first rest break. He was inside the enclosed backyard of the employer's plant along with 30 or 40 other employees. The plant employees regularly went to that area during rest breaks. The yard was enclosed by a chain link fence, 7 or 8 feet high. The gate

in the fence was locked, and employees were not permitted to leave the plant premises during the rest breaks without permission from the supervisor. A spur railroad track ran through the yard. The track leads through the fence to a loading platform at the rear of the plant. Cars owned by the employees were also parked within the yard.

On the evening in question, plaintiff was standing in a group with two other men about thirty feet away from the track. It was still daylight and the sun was shining brightly. One of the men suddenly yelled, "What is that on the track?" The three men, including plaintiff, looked in the direction of the track. There was a shiny object on the track that appeared to be "glittering." All three men made sudden moves to start running. Plaintiff started to run with the other two in the direction of the glittering object. He took three or four steps and started stumbling. His foot caught on the end of one of the railroad track ties and his left knee struck the track as he went down.

The other two men ran toward the object on the track at the same time that plaintiff did. They had not been scuffling, pushing, shoving or playing around in any way, nor had they discussed racing each other or otherwise planned to run toward the track. Plaintiff testified that he assumed that the shiny object was money because the small dollar coins had just been issued; he impulsively took off running toward the object because he thought it might be money. The nature of the "shiny object" was not disclosed by the evidence.

Plaintiff suffered a fractured tibia and fibula of the left leg. The fracture invaded the knee joint and was severe. Although the fracture has healed, plaintiff has not fully recovered and future surgery is indicated.

There were no rules or regulations prohibiting running on the premises. In fact, every day some of the employees would run to the time clock at the end of a shift to see who could get there first and the plaintiff never saw or heard of any employee being called down for racing in the plant.

The Industrial Commission's findings of fact reflect the foregoing evidence. The plaintiff was also found to be temporarily to-

tally disabled as a result of injury. The opinion and award, in pertinent part, reads as follows:

### CONCLUSIONS OF LAW

1. On May 22, 1980 plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant employer.

### COMMENT

Since plaintiff remained on the premises and was required to do so absent permission of his supervisor to leave the premises, his injury was definitely in the course of his employment.

As to whether or not it arose out of the employment, plaintiff's deviation in running along the railroad track was not sufficient to be a deviation from his employment that would take him out of coverage of the Workers' Compensation Act. See Larson, § 23.66.

The defendant employer contends that the evidence totally fails to support the Industrial Commission's findings and conclusions that plaintiff's injury by accident arose out of and in the course of his employment because (1) the accident originated in plaintiff's personal decision to run; (2) plaintiff was not then engaged in the duties of his employment or some authorized activity incident thereto; (3) the accident was not caused by any risk inherent in his work environment or related to his employment; and (4) any risk in such running was a personal risk distinct and disassociated from plaintiff's employment. We disagree.

In interpreting G.S. 97-2(6), the Supreme Court has stated:

". . . The words 'out of' refer to the origin or cause of the accident and the words 'in the course of' to the time, place, and circumstances under which it occurred. [Citations omitted.] There must be some causal relation between the employment and the injury; but if the injury is one which, after the event, may be seen to have had its origin in the employment, it need not be shown that it is one which ought to have been foreseen or expected. [Citations omitted.]"

*Watkins v. City of Wilmington*, 290 N.C. 276, 280, 225 S.E. 2d 577, 580 (1976), *quoting Conrad v. Foundry Company*, 198 N.C. 723, 726, 153 S.E. 266, 269 (1930). The phrases "arising out of" and "in the course of" employment are not synonymous, but involve two distinct ideas and impose a double condition, both of which must be satisfied in order to render an injury compensable. *Poteete v. North State Pyrophyllite Co.*, 240 N.C. 561, 82 S.E. 2d 693 (1954). Together, the two phrases are used in an attempt to separate work-related injuries from nonwork-related injuries. *Watkins v. City of Wilmington, supra.* A conjunction of the factors of time, place and circumstances will bring a particular accident within the concept of *course of* employment. *Harless v. Flynn*, 1 N.C. App. 448, 162 S.E. 2d 47 (1968). In *Harless* this Court held that the plaintiff's injuries arose out of and in the course of her employment where her injuries resulted from a collision between two automobiles of co-employees in the company parking lot as the two automobiles were leaving the parking lot to go to lunch off the premises. The opinion contains an extensive review of the relevant case law and sets forth the following general principles:

> The words *in the course of* have reference to the "time, place and circumstances" under which the accident occurred . . .
>
> *        *        *
>
> With respect to *time*, the course of employment begins a reasonable time before actual work begins . . . and continues for a reasonable time after work ends . . . and includes intervals during the day for rest and refreshment . . .
>
> With respect to *place*, the course of employment includes the premises of the employer . . . "It is usually held that an injury on a parking lot owned or maintained by the employer for his employees is an injury on the employer's premises." . . .
>
> With respect to *circumstances*, injuries within the course of employment include those sustained while " 'the employee is doing what a man so employed may reasonably do within a time which he is employed and at a place where he may reasonably be during that time to do that thing.' " . . .
>
> *        *        *

In tending to his personal, physical needs an employee is indirectly benefiting his employer. Therefore, the course of employment continues when the employee goes to the washroom . . . takes a smoke break . . . takes a break to partake of refreshment . . . goes on a personal errand involving temporary absence from his post of duty . . . voluntarily leaves his post to assist another employee . . . (Citations omitted.)

1 N.C. App. at 455-457, 162 S.E. 2d at 52-53.

In the present case plaintiff Williams was clearly in the course of his employment with respect to the factors of time, place and circumstances as those terms have been interpreted by our courts. Plaintiff was injured during the first regularly scheduled rest break of his shift. He, along with 30 to 40 other employees, were locked inside the enclosed backyard of the plant premises as was customary during these rest breaks. For all practical purposes, plaintiff was required to remain in the yard during his 15 minute break for rest and relaxation since it was enclosed by a 7 foot high chain link fence and employees were not permitted to leave the plant premises during the rest breaks without express permission. The railroad track on which plaintiff tripped and suffered his injury was an integral part of the plant equipment where he worked and took his breaks.

The fact that the plaintiff was not actually engaged in the performance of his duties as a laborer at the time of the injury does not automatically defeat his claim for compensation. *Brown v. Aluminum Co.*, 224 N.C. 766, 32 S.E. 2d 320 (1944) (accident occurring while deceased watchman, returning to the washroom for his flashlight, was pushed aside by fellow employee in a hurry arose out of and in the course of employment). In *Bellamy v. Manufacturing Co.*, 200 N.C. 676, 158 S.E. 246 (1931), it was held that an accident was in the course of employment, and the employee entitled to compensation, where the evidence tended to show that the employees in defendant's spinning department were required to remain in the mill for a half hour after work stopped, that an employee was injured during this time in an accident while riding in an elevator to another floor with a friend for the purpose of seeing about getting her friend a job in the mill, and it was the custom of the employees to use the elevator. In *Harless v. Flynn, supra,* the plaintiff's injuries occurring during her lunch hour as

she was in the process of leaving her employer's parking lot, with the acquiescence of the employer, to eat lunch off the employer's premises, were held to occur in the course of employment. *See also* 1A Larson, The Law of Workmen's Compensation § 21.21(a) (1982) (the course of employment goes beyond an employee's fixed hours of work to include regular unpaid rest periods taken on the premises since the activity is related to employment under the personal comfort doctrine). Thus, plaintiff's rest break accident on the employer's premises clearly occurred during the course of his employment. If, in addition to this, the accident *arose out of* employment, then his resulting injury is properly compensable under the Act.

With respect to *arising out of,* the *Harless* court cited the following general rules:

> The phrase *arising out of* has reference to the origin or cause of the accident . . . But this is not to say that the accident must have been caused by the employment. "Taking the words themselves, one is first struck by the fact that in the 'arising' phrase, the function of employment is *passive* while in the 'caused by' phrase it is *active.* When one speaks of an event 'arising out of employment,' the initiative, the moving force, is something other than the employment; the employment is thought of more as a *condition* out of which the event arises than as the force producing the event in affirmative fashion." 1 Larson, Workmen's Compensation Law, § 6.50, p. 45. The North Carolina Supreme Court has similarly stated the connection between the employment and the accident: "Where any reasonable relationship to the employment exists or employment is a contributory cause, the Court is justified in upholding the award as 'arising out of employment.'" (Citation omitted.)

> \*       \*       \*

> An injury arises out of the employment when it comes from the work the employee is to do, or out of the service he is to perform, or as a natural result of one of the risks of the employment; the injury must spring from the employment or have its origin therein (citation omitted). For an accident to arise out of the employment, there must be some causal connection between the injury and the employment. When an in-

jury cannot fairly be traced to the employment as a contributing proximate cause, or if it comes from a hazard to which the employee would have been equally exposed apart from the employment, or from the hazard common to others, it does not arise out of the employment.

1 N.C. App. at 455, 162 S.E. 2d at 52. In concluding that the plaintiff's injuries were due to "an employment-connected risk" as opposed to one obviously common to the public at large, the court in *Harless* stated:

> The risk of injury in an automobile mishap is one that is obviously common to the public at large . . . Yet where large numbers of employees drive automobiles to their places of employment and provision is made for parking on the employer's premises it is clear that the employment itself has created conditions in which the risk of automobile-connected injuries is different in kind and possibly greater in degree than that confronted by the public at large. The risk may be increased by a large number of automobiles, concentrated in a confined space, coming into and going out of the lot at approximately the same times, operated by employees who may be preoccupied with thoughts or work to be begun, or exhausted from work completed and anxious to get to their respective homes or other places of relaxation and refreshment . . . It clearly appears that plaintiff was injured by accident *arising out of* her employment." (Citations omitted.)

1 N.C. App. at 459, 162 S.E. 2d at 55. Similarly, in *Rewis v. Insurance Co.*, 226 N.C. 325, 38 S.E. 2d 97 (1946), the Supreme Court stated that an accident arises out of the employment when it occurs in the course of employment and is the result of a risk involved in the employment or incident to it, or to the conditions under which it is required to be performed. Further, that acts necessary to the life, comfort and convenience of the employee are incidental to employment, and an accident occurring in the performance of such acts is generally regarded as arising out of and in the course of the employment. Applying those general rules to the facts shown by the evidence, the court in *Rewis* upheld an award of compensation to an employee who, feeling faint from colitis, went to the men's washroom, slipped on the slick tile floor as he went to one of the open windows for some

fresh air, and fell through the window to his death nine stories below.

The Industrial Commission correctly concluded that plaintiff's injury arose out of his employment, that is, had its origin in an employment-connected risk as opposed to one common to the public at large. Plaintiff was locked inside the plant yard which was enclosed with a high chain link fence with a large crowd of fellow employees as was customary during a regularly scheduled rest break. The railroad track over which he tripped and injured his knee was an integral part of the equipment of the plant, and it ran directly through the area in which he took his relaxation breaks. Permission from the plant supervisor was necessary in order for an employee to leave the plant premises during these scheduled rest breaks. All of these factors created conditions in which the risk of injury of the type the plaintiff suffered was very different in kind and much greater in degree than that confronted by the public at large.

The situation at bar is not unlike that presented in *Bellamy v. Manufacturing Co., supra,* where the claimant was required to remain in the mill for a half hour after work stopped and was then injured by accident while riding in an elevator on a personal errand. Similarly, in *Watkins v. City of Wilmington, supra,* the claimant-fireman was required to remain at the fire station during his entire 24-hour tour of duty. The evidence and findings were to the effect that the firemen often made minor repairs on their automobiles on fire station premises during their lunch hour, that the practice was allowed by the claimant's supervisors, and that these repairs benefited the fire department. The claimant was injured in an explosion which occurred when he poured gasoline on the oil breather cap from a co-worker's car in an attempt to clean it during his lunch hour on the employer's premises. The court, quoting from 1 Larson, Workmen's Compensation Law § 29.00 (1972), stated that "course of employment" and "arising out of employment" are both parts of a single test of work-connection and therefore, "deficiencies in the strength of one factor are sometimes allowed to be made up by strength in the other." 290 N.C. at 281, 225 S.E. 2d at 581. The court held that the plaintiff's act in assisting in the cleaning of the oil breather cap from a fellow employee's car during the lunch period was a reasonable

activity, and that the risk inherent in such activity was a risk of the employment.

In the plaintiff's case, the plant environment contributed a distinct risk of injury to the employees on their rest break by virtue of the fact that a railroad track ran through the yard. Furthermore, the plaintiff's own conduct in spontaneously running toward a shiny, glittering object on the track along with his fellow employees was not unreasonable under the circumstances. The circumstances were these: they were free to engage in recreational activities during the rest breaks, but not generally free to leave the yard; there were no rules or regulations prohibiting running on the plant premises; running to the time clock at the end of the day was customary and plaintiff knew of no disciplinary action connected therewith. It can hardly be said that racing or running during a regular rest break is a departure or deviation from the course of employment, because plaintiff's assigned duties at that time were to take a break in the locked yard of the plant along with a large group of his fellow employees. Where an employer creates conditions under which the employees are treated as children in a school yard, the risk incident to these conditions is that they will so behave, and inevitably, some injuries will result.

Defendant argues that the connection between the accident and the employment is absent because the accident was caused by plaintiff's personal decision to run in competition with his fellow employees toward the shiny object in order to either claim the prize or satisfy his curiosity or both. In discussing the effect of a lull in work, Professor Larson, in 1A Larson, *supra*, § 23.65, p. 5-157 states:

> If the primary test in horseplay cases is deviation from employment, the question whether the horseplay involved the dropping of active duties calling for claimant's attention as distinguished from the mere killing of time while claimant has nothing to do assumes considerable importance. There are two reasons for this: first, if there were no duties to be performed, there were none to be abandoned; and second, it is common knowledge, embodied in more than one old saw, that idleness breeds mischief, so that if idleness is a fixture of the employment, its handmaiden mischief is also.

In the same section, at pages 5-161 and 5-162, Larson concludes with the following statement:

> Injuries during lunch hour on the premises, since this interval usually includes some idle time, have been treated for this purpose like lulls in the work. Thus, a young employee was found to have remained in the course of his employment when he jumped on a coal chute as a lark during his lunch period, and compensation was awarded to a girl for injuries sustained while playfully riding on a hand truck during her lunch hour, although evidence of prior custom was a strong factor in the decision.
>
> Of course, it would be going much too far to say that no horseplay enterprise undertaken during enforced idleness constitutes a deviation. But it is suggested that the idleness factor is relevant to this extent, that the duration and seriousness of the deviation which will be called substantial should be somewhat smaller when the deviation necessitates the dropping of active duties than when it does not.

Plaintiff's injury occurred during a regularly scheduled rest break. Even assuming *arguendo*, that the act of running or racing with his fellow employees towards a shiny object constitutes a "deviation" from his duty to take a rest break, under the circumstances such a deviation is hardly substantial or consequential enough to take his injury out of the scope of the Act's coverage.

As to the element of curiosity, Larson, *supra*, in Section 23.66, p. 5-162 states:

> Closely similar in principle to participation in horseplay is deviation from the claimant's immediate employment path to satisfy his personal curiosity. The modern decisions tend to support the suggestion urged in this sub-section that if the deviation be trifling and momentary it should be disregarded like any other insubstantial deviation. Along with all the other frailties of the average man—his carelessness, his prankishness, his tobacco habit, his cola habit, his inclination to rest once in a while and chat with his neighbor—there must also be expected one more: his natural human proclivity for sticking his head in mysterious openings, putting fingers

Williams v. Hydro Print

in front of fan blades, and pulling wires and pins on strange mechanical objects that he finds.

In the present case, there were no rules or regulations posted or furnished, in writing or orally, which prohibited running on the premises. Racing to the time clock was a repeated practice, apparently acquiesced in by the defendant employer. Plaintiff's act of running when a fellow employee in a crowded plant yard suddenly yelled, "What is that on the track," was a perfectly normal and instinctive human reaction. Plaintiff's impulsive running to satisfy his curiosity, if such it was, was not unreasonable under the circumstances and did not constitute a significant departure from the realm of accepted employee practices on the premises.

Our courts have upheld awards of compensation where the activities resulting in the injuries were not strictly in furtherance of a duty of the employment, but were considered a reasonable activity under the circumstances or a minor deviation only. *See Watkins v. City of Wilmington, supra. See also, Lee v. Henderson & Associates*, 284 N.C. 126, 200 S.E. 2d 32 (1973) (compensation award upheld where plaintiff's injury resulted from use of employer's electric saw and scrap material for an article for his personal use during the Saturday morning lull) and *Stubblefield v. Construction Co.*, 277 N.C. 444, 177 S.E. 2d 882 (1970) (employee's negligent act of striking at the objects on a moving conveyor belt with a pair of pliers in the performance of his duty of waiting for his foreman does not bar the right to compensation for the resulting accident).

In its brief the defendant employer cites a number of cases in support of its argument that the plaintiff's injury did not arise out of an incident of his employment. We have carefully examined these cases and find that they are clearly distinguishable from the present case. In conclusion, we hold that plaintiff's injuries arose out of and in the course of his employment, and the award of the Industrial Commission is

Affirmed.

Judges HILL and PHILLIPS concur.