INMAN, Judge.
*623 A decision by the North Carolina Industrial Commission that contains contradictory factual findings and misapplies controlling law must be set aside and remanded to the Commission to determine, in light of the correct legal standards, factual and legal issues regarding whether an employee's injury *134 arose out of and in the course of his employment.
Shaun Weaver ("Plaintiff" or "Mr. Weaver") appeals from an Opinion and Award of the Full Commission of the North Carolina Industrial Commission (the "Commission"), denying him compensation for injuries suffered in an on-the-job accident. For the reasons explained in this opinion, we remand.
Factual and Procedural History
Mr. Weaver's appeal arises from an accident that occurred in October 2012 in an outdoor storage yard of Seegars Elizabeth City, a facility owned and operated by Seegars Fence Company ("Defendant Seegars"). Mr. Weaver, at that time 20 years old, was in the yard with Daniel Glenn Dedmon ("Dedmon"), who owned a small business known alternatively as Dan the Fence Man or Bayside Construction.
The record tends to show the following:
A few weeks before the accident, Defendant Seegars had hired Dedmon as a subcontractor in anticipation of a brief period of high-volume contracts for fence construction. Defendant Seegars provided fencing materials as well as a truck and trailer, and Dedmon provided the tools. Dedmon hired Mr. Weaver to do the work. Dedmon directed and *624 controlled Mr. Weaver's work. Mr. Weaver had worked building fences with Dedmon, the father of Mr. Weaver's half-brother, for a few years.
Defendant Seegars delivered fencing supplies to construction worksites on flatbed trucks. Other supplies were picked up by Dedmon and Mr. Weaver from the Seegars storage yard. After completing their work each day, Dedmon and Mr. Weaver would return to the storage yard, unload unused supplies, and reload supplies needed for the following day. According to Mr. Weaver's testimony, to load and unload supplies, Dedmon regularly operated a Bobcat skid-steer loader kept in the yard and Mr. Weaver regularly operated a forklift kept in a nearby warehouse. Mr. Weaver had no certificate to drive the forklift but testified that he was never told that he was not allowed to operate it. The storage yard is a quarter-acre gravel yard approximately 200 feet behind the warehouse and an adjacent office. A seven-foot fence with privacy slats and barbed wire surrounds the yard.
Between 5:30 and 5:40 p.m. on 17 October 2012, Mr. Weaver and Dedmon returned to the storage yard after finishing their day's work on a construction site. Dedmon operated the Bobcat while Mr. Weaver operated the forklift. At approximately 5:50 p.m., the forklift overturned, entrapping Mr. Weaver between the roll bars of the top portion of the forklift. Mr. Weaver testified that he had completed loading and unloading items with the forklift and was about to return the forklift to the warehouse when he turned it too quickly, causing it to overturn.
Charles Mapes, the owner and operator of a business next door to Seegars who was working about 300 to 350 feet from the storage yard that afternoon, witnessed Mr. Weaver operating the forklift prior to the accident. Mapes heard the loud noise of equipment "running at a high throttle" and looked over the fence to see the forklift being driven in circles or "donuts."[1] Mapes did not see any work materials and "there was no indication that there was any work being done." Mapes turned around to carry some lumber into his building when he heard a loud boom, followed by screaming. Mapes ran over to the yard and found Dedmon trying without success to use the Bobcat to lift the forklift off of Mr. Weaver's body, which was folded in half.
Paramedics arrived at approximately 5:55 p.m., freed Mr. Weaver from the forklift, and transported him to a nearby hospital. Mr. Weaver was *625 diagnosed with, inter alia , a crush injury; closed head injury ; cervical, thoracic, lumbar, and pelvic fractures ; liver and renal lacerations ; splenic injury; and cardiac arrest. Mr. Weaver required several months of in-patient care and at the time of *135 the hearing of this matter remained in an assisted living facility.
At the time of the accident, Defendant Seegars had workers' compensation insurance. Dedmon had no workers' compensation insurance. Defendant Seegars had not obtained a certificate of workers' compensation insurance coverage from Dedmon prior to the accident.
On 23 October 2012, one week after the accident, Defendant Seegars filed a Form 19 Notice of Accident pursuant to the Workers' Compensation Act. On 5 November 2012, Defendant Seegars's insurance carrier filed a Form 61 Denial of Workers' Compensation Claim explaining that a claim by Mr. Weaver arising from the accident would be denied because "[e]mployee did not sustain an injury by accident or specific traumatic event arising out of and during the course and scope of his employment." On 11 April 2013, Mr. Weaver filed a Form 18 Notice of Injury pursuant to the Workers' Compensation Act. On 20 August 2013, Mr. Weaver filed a Form 33 Request for Hearing.
Mr. Weaver and Defendant Seegars, through counsel, appeared at a hearing on 20 February 2014 before Deputy Commissioner Adrian Phillips. Dedmon did not appear and did not participate in the proceedings below. Following depositions and briefing, the Deputy Commissioner on 7 October 2014 entered an Opinion and Award denying Mr. Weaver's claim in its entirety. The Deputy Commissioner found credible testimony by Mapes that Mr. Weaver was driving the forklift in high-speed turns or "donuts" and found that the turns caused the forklift to tip over onto Mr. Weaver.
Mr. Weaver appealed to the Full North Carolina Industrial Commission pursuant to N.C. Gen. Stat. § 97-85 and Commission Rule 701, and the matter was heard on 10 March 2015. The parties, again with the exception of Dedmon, appeared through counsel and submitted briefs and oral arguments. The Commission entered an Opinion and Award on 6 July 2016 affirming the Deputy Commissioner's Opinion and Award and providing extensive findings of fact and conclusions of law denying Mr. Weaver's claim for compensation. The Commission recited Mr. Weaver's testimony in its findings of fact but did not make a finding that the testimony was credible, or that it was not credible. The Commission found Mapes's testimony-including his account of seeing the forklift doing "donuts"-was credible because he "was an *626 unbiased, disinterested eyewitness of the events immediately preceding and subsequent to the flipping of the forklift."
The Commission also found credible testimony by an accident reconstruction expert that photographs showing curved tire impressions at the accident scene were consistent with the forklift driving in tight circles. The Commission found that Mr. Weaver "was operating the forklift at such a speed to cause it to rollover and inflict the resulting serious injuries from which [he] now suffers." The Commission further found that "the manner in which Plaintiff operated the forklift preceding his injury was unreasonable and reckless, in essence joy riding and/or thrill seeking." The Commission concluded that Mr. Weaver's injury did not arise out of and in the course of his employment and is therefore not compensable.
Commissioner Bernadine Ballance dissented, asserting that Mr. Weaver was injured while operating the forklift "for the purpose of moving and loading materials needed to accomplish the job for which he was hired," and "in the presence of, at the direction of, and under the supervision of his employer," Dedmon. As the statutory employer, Commissioner Ballance concluded that Defendant Seegars should be liable to the same extent Dedmon would have been if he had purchased workers' compensation insurance. Beyond disputing the Commission's findings based on the evidence, Commissioner Ballance noted that the Commission's finding that Plaintiff was operating the forklift at an excessive or high speed "indicates that Plaintiff may have been negligently operating the forklift" at the time of the accident. Commissioner Ballance reasoned that "neither negligence, nor gross negligence would bar compensation to Plaintiff, if Plaintiff's actions in operating the forklift were reasonably related to the accomplishment of the tasks for which he was hired."
*136 Mr. Weaver timely appealed the Commission's Opinion and Award.
Analysis
Mr. Weaver argues the Commission's legal conclusions are inconsistent with its factual findings and are not supported by the relevant case law. Specifically, Mr. Weaver argues the Commission's findings do not support the legal conclusion that his manner of operating the forklift removed him from the scope of his employment. He also argues that the Commission failed to make findings necessary to support the conclusion that he was injured while engaging in an activity unrelated to the job duties he was performing. After careful review, we agree and remand this matter to the Commission to reconsider and to determine, *627 based on the North Carolina Workers' Compensation Act and our precedent, whether Mr. Weaver's injuries arose out of and in the course of his employment.
I. Standard of Review
Our review of an opinion and award of the Commission is limited to determining: (1) whether the findings of fact are supported by competent evidence, and (2) whether those findings support the Commission's conclusions of law. Chambers v. Transit Mgmt. , 360 N.C. 609, 611, 636 S.E.2d 553, 555 (2006). Unchallenged findings of fact "are 'presumed to be supported by competent evidence' and are, thus 'conclusively established[.]' " Chaisson v. Simpson , 195 N.C.App. 463, 470, 673 S.E.2d 149, 156 (2009) (quoting Johnson v. Herbie's Place , 157 N.C.App. 168, 180, 579 S.E.2d 110, 118 (2003) ).
The Commission's conclusions of law are reviewed de novo . McRae v. Toastmaster, Inc. , 358 N.C. 488, 496, 597 S.E.2d 695, 701 (2004) (citation omitted). Challenged findings of fact are conclusive on appeal "when such competent evidence exists, even if there is plenary evidence for contrary findings." Hardin v. Motor Panels, Inc ., 136 N.C.App. 351, 353, 524 S.E.2d 368, 371 (2000). This Court has no authority to re-weigh the evidence or to substitute its view of the facts for those found by the Commission.
Because appellate courts have no jurisdiction to determine issues of fact, errors by the Commission regarding mixed issues of law and fact are generally corrected by remand rather than reversal. "When the Commission acts under a misapprehension of the law, the award must be set aside and the case remanded for a new determination using the correct legal standard." Ballenger v. ITT Grinnell Indus. Piping, Inc. , 320 N.C. 155, 158, 357 S.E.2d 683, 685 (1987) (citations omitted).
In this appeal, Mr. Weaver challenges some aspects of the Commission's Opinion and Award that are denominated conclusions of law but which actually are findings of fact. Our standard of review depends on the actual nature of the Commission's determination, rather than the label it uses. Barnette v. Lowe's Home Ctrs., Inc ., --- N.C.App. ----, ----, 785 S.E.2d 161, 165 (2016) ("Regardless of how they may be labeled, we treat findings of fact as findings of fact and conclusions of law as conclusions of law for purposes of our review.").
"[T]he determination of whether an accident arises out of and in the course of employment is a mixed question of law and fact, and this Court may review the record to determine if the findings and conclusions are *628 supported by sufficient evidence." Gallimore v. Marilyn's Shoes , 292 N.C. 399, 402, 233 S.E.2d 529, 531 (1977). Because the amount of deference provided to the Commission by the appellate court can determine the ultimate outcome of an appeal, it is imperative that we take care to apply the appropriate standard of review to each determination in dispute.
II. "Arising Out of and in the Course of Employment"
The first issue disputed between the parties is whether Mr. Weaver's injury arose out of and in the course of his employment.
The North Carolina Workers' Compensation Act (the "Act") defines compensable injury as "only injury by accident arising out of and in the course of the employment." N.C. Gen. Stat. § 97-2(6) (2015). The terms "arising out of" and "in the course of" employment "are not synonymous, but involve *137 two distinct ideas and impose a double condition, both of which must be satisfied in order to render an injury compensable." Williams v. Hydro Print, Inc. , 65 N.C.App. 1, 5, 308 S.E.2d 478, 481 (1983) (citation omitted). As both requirements are "parts of a single test of work-connection ..., 'deficiencies in the strength of one factor are sometimes allowed to be made up by strength in the other.' " Id. at 9, 308 S.E.2d at 483 (quotation marks and citation omitted). "The term 'arising out of' refers to the origin or cause of the accident, and the term 'in the course of' refers to the time, place, and circumstances of the accident." Hoyle v. Isenhour Brick & Tile Co. , 306 N.C. 248, 251, 293 S.E.2d 196, 198 (1982) (citation omitted).
In Teague v. Atlantic Co. , 213 N.C. 546, 196 S.E. 875 (1938), the Supreme Court of North Carolina denied a workers' compensation claim by the estate of an employee who died while riding on a crate conveyor belt, despite a previous warning by his supervisor that riding the belt was dangerous and prohibited. The Commission relied on the Act's definition of compensable injury and concluded that the employee's death did not arise out of his employment because "there was no causal connection between the conditions under which the work was required to be performed and the resulting injury." Id. at 548, 196 S.E. at 876. The Supreme Court also quoted the Commission's reasoning that the employee died, not as a result of a risk inherent in his work activities, but rather
by stepping aside from the sphere of his employment and voluntarily and in violation of his employer's orders, for his own convenience or for the thrill of attempting a hazardous feat, attempted to ride on machinery installed and used for another purpose and obviously dangerous for *629 the use he attempted to make of it rather than take the usual course of going from the basement to the first floor by way of the stairs provided and used for that purpose.
Id. at 548, 196 S.E. at 876.
In Spratt v. Duke Power Co. , 65 N.C.App. 457, 465, 310 S.E.2d 38, 43 (1983), this Court allowed compensation pursuant to the Act for an employee who was injured while breaking a safety rule. The employee, who worked in an industrial plant, was running toward the canteen to buy chewing gum when he slipped on coal dust and fell. Id. at 459, 310 S.E.2d at 40. He knew that running inside the plant was prohibited and had been warned previously not to do so. Id . at 459, 310 S.E.2d at 40. This Court held "[t]he fact that the employee is not engaged in the actual performance of the duties of the job does not preclude an accident from being one within the course of employment." Id . at 468, 310 S.E.2d at 45 (citing Brown v. Aluminum Co ., 224 N.C. 766, 32 S.E.2d 320 (1944) ) (holding an employee's injury, which occurred when he was returning to the bathroom to retrieve his flashlight, arose in the course of employment).
In Rivera v. Trapp , 135 N.C.App. 296, 299, 519 S.E.2d 777, 779 (1999), this Court affirmed an award of compensation to an employee who was injured while operating a forklift, even though the employee's job duties did not include using the forklift. The Court distinguished Teague :
Teague dealt with a situation where a thrill-seeking employee took action that bore no resemblance to accomplishing his job. Here, the record shows that plaintiff acted solely to accomplish his job. Plaintiff rode on the forklift to move necessary materials to the third floor. While this action may have been outside the "narrow confines of his job description" as a roofer, it is clear that plaintiff's actions were reasonably related to the accomplishment of the task for which he was hired. Further, in Teague , the foreman had given the plaintiff an express order not to ride the conveyor belt. Here, plaintiff testified that Schuck authorized him to ride the forklift.
Id. at 301-02, 519 S.E.2d at 780 (internal citations omitted); see also Hensley v. Caswell Action Com. Inc. , 296 N.C. 527, 531-32, 251 S.E.2d 399, 401-02 (1979) (holding that a groundskeeper who drowned after wading in a lake to cut weeds, ignoring a specific instruction not to go in the water, was injured in the course of and arising from his employment).
*630 Arp v. Parkdale Mills Inc. , 150 N.C.App. 266, 274, 563 S.E.2d 62, 68 (2002) (Tyson, J., dissenting), adopted per curiam , *138 356 N.C. 657, 576 S.E.2d 326 (2003), provides an analytical framework for assessing whether an employee's injury was causally related to the employment. In Arp , the North Carolina Supreme Court adopted the dissent of Judge Tyson (" Arp " or "the opinion"), which denied compensation to an employee who was injured when he fell from a seven and one-half foot fence on his employer's premises. Id. at 268, 563 S.E.2d at 64. The employee, who was leaving fifteen minutes before the end of his shift, had climbed the fence instead of exiting through a gate, which remained locked until the shift ended. Id . at 268, 563 S.E.2d at 64. Arp held that work-related activities are generally divided into two types:
(1) actual performance of the direct duties of the job activities, and (2) incidental activities. The former are almost always within the course of employment, regardless of the method chosen to perform them. Incidental activities are afforded much less protection. If they are: (1) too remote from customary usage and reasonable practice or (2) are extraordinary deviations, neither are incidents of employment and are not compensable.
Id. at 277, 563 S.E.2d at 69-70 (internal citations omitted). Arp held that the plaintiff's activity-leaving work before his shift ended-was not in the actual performance of a direct job duty, and then assessed whether the plaintiff's actions constituted a reasonable incidental activity. Id . at 277, 563 S.E.2d at 69-70. The opinion noted that Teague and other North Carolina appellate decisions "have consistently denied compensation where the incidental activity was unreasonable." Id. at 278, 563 S.E.2d at 70. Distinguishing its analysis from negligence theory, the opinion concluded that the "[p]laintiff's unreasonable actions, not the grossly negligent manner in which he performed them, produced his injuries." Id . at 280, 563 S.E.2d at 71. In adopting this Court's opinion in Arp , the Supreme Court did not overturn Spratt , Rivera , or other decisions distinguishing Teague .
Considering our precedent, we now explain why the Commission's Opinion and Award in this case must be set aside and remanded.
The Commission's Conclusion of Law # 3, challenged by Mr. Weaver, reads:
The Full Commission's finding that Plaintiff was "joyriding" or "thrill seeking," which bore no relation to accomplishing the duty for which Plaintiff was hired, *631 removed Plaintiff from the scope of his employment. To the extent Plaintiff may have initially performed some work-related tasks with the forklift, his decision to do donuts on the Seegars' forklift, was too remote from customary usage and reasonable practice and constituted an extraordinary deviation from his employment. Pursuant to Arp v. Parkdale Mills, Inc. , 356 N.C. 657, 576 S.E.2d 326 (2003), the Full Commission concludes that Plaintiff's activity leading to his injury on 17 October 2012 was unreasonable. Consequently, Plaintiff's injury did not arise out of and in the course of his employment and is not compensable. N.C. Gen. Stat. § 97-2(6).
The Commission's determination that Mr. Weaver's "joyriding" or "thrill seeking" bore no relation to his job duties, despite being denominated as a conclusion of law, is actually a finding of fact. So is the Commission's determination that "Plaintiff may have initially performed some work related tasks with the forklift," contained in this same denominated conclusion of law. " 'Any determination reached through logical reasoning from the evidentiary facts is more properly classified a finding of fact.' " Barnette , --- N.C.App. at ----, 785 S.E.2d at 165 (quoting In re Helms , 127 N.C.App. 505, 510, 491 S.E.2d 672, 675 (1997) ). These inconsistent factual findings-one stating that Mr. Weaver's actions bore no relation to his job duties, and the other stating that Mr. Weaver may have initially performed some work-related tasks with the forklift-preclude this Court from determining whether the Commission's findings support the legal conclusion that Plaintiff's operation of the forklift removed him from the scope of employment. Because these inconsistencies are factual, too material to be disregarded as surplusage, and cannot be resolved by reference to other findings in the Opinion and Award, we must vacate the decision and remand for redetermination by the Commission. To guide the *139 Commission in its proceedings on remand, we will address further the legal issues disputed between the parties and the applicable law.
The Commission's finding that Mr. Weaver "may have initially performed some work-related tasks with the forklift" undermines the Commission's conclusion that the injury did not arise out of and in the course of the employment. Mr. Weaver testified that the accident occurred as he was returning the forklift to the warehouse after using it for work purposes. The Commission noted this testimony in its findings of fact but did not indicate whether it found the testimony credible.
*632 "[A]n injury arises out of the employment when it is a natural and probable consequence or incident of the employment and a natural result of one of its risks, so there is some causal relation between the injury and the performance of some service of the employment." Robbins v. Nicholson , 281 N.C. 234, 239, 188 S.E.2d 350, 354 (1972) (internal quotation marks omitted). The analysis in Robbins , which pre-dated the Act, has been followed by this Court in applying the Act's definition of "injury." See McGrady v. Olsten Corp. , 159 N.C.App. 643, 647-48, 583 S.E.2d 371, 373 (2003) (holding a certified nursing assistant whose duties included preparing meals was injured in the course of and arising from her employment when she fell while climbing a tree in her employer's back yard to pick a pear).
The only statutory exceptions to guaranteed compensation for injuries from a work-related accident are (1) intoxication; (2) impairment from a controlled substance; and (3) willful intent to injure or kill oneself or another. N.C. Gen. Stat. § 97-12 (2015). Even an employee's willful violation of a safety rule does not preclude recovery, but instead reduces the recovery by ten percent. Id . We are aware of no prior North Carolina appellate decision addressing a claim by an employee who was engaged in thrill seeking while returning equipment used for work-related tasks. But the Commission did not clearly find that Mr. Weaver's accident occurred while he was returning the forklift after using it for a work-related task, and this Court cannot make factual findings.
The Commission's finding that Mr. Weaver "may have initially performed some work-related tasks with the forklift" materially alters the findings of fact contained in the Opinion and Award, and we cannot disregard the finding as surplusage. The Commission's use of the word "may" and its omission of any finding that Mr. Weaver's testimony was credible, so that the circumstances he testified about are not necessarily found as a fact, leave this Court only to guess what the Commission would have found if it had correctly applied Arp , Spratt , and other precedent.
For the benefit of the Commission on remand, we also note that the Commission misapplied the law in a second finding in the same sentence. The finding-immediately following the finding that Mr. Weaver may have used the forklift for work-related tasks-that "his decision to do donuts ... was too remote from customary usage and reasonable practice and constituted an extraordinary deviation from his employment" reflects a legal analysis applicable only to an incidental activity not related to the employment. The sentence as a whole, and considered in the context of the entire decision, indicates that the Commission misapprehended the law.
*633 III. Negligence Theory
The second issue before us is whether the Commission erroneously applied a negligence analysis to deny compensation to Mr. Weaver. Defendants contend the Commission did not apply a fault analysis, but rather determined that the nature of Mr. Weaver's actions was so far removed from his job duties that the accident was not causally related to the employment.
The Act "was created to ensure that injured employees receive sure and certain recovery for their work-related injuries without having to prove negligence on the part of the employer or defend against charges of contributory negligence." Whitaker v. Town of Scotland Neck , 357 N.C. 552, 556, 597 S.E.2d 665, 667 (2003) (citation omitted).
Here, the Commission found the following facts:
*140 35. Based upon a preponderance of the credible evidence of record, the Full Commission finds that Plaintiff was operating the forklift at such a speed to cause it to rollover and inflict the resulting serious injuries from which Plaintiff now suffers.
36. The Full Commission further finds that the manner in which Plaintiff operated the forklift preceding his injury was unreasonable and reckless, in essence joy riding and/or thrill seeking.
Unlike Teague and other decisions denying compensation for injuries caused by "dangerous thrill-seeking completely unrelated to the employment[,]" Hensley, 296 N.C. at 531, 251 S.E.2d at 401, here the Commission's conclusion is grounded in findings that characterize the speed and manner in which Plaintiff operated the forklift. These findings do not address whether Mr. Weaver was operating the forklift in furtherance of-or incidental to-his job duties and his employer's interest. These findings appear to impute negligence on behalf of the employee, indicating that the Commission reached its decision under a misapprehension of law.
[T]he Workers' Compensation Act was 'intended to eliminate the fault of the workman as a basis for denying recovery' and that 'the only ground set out in the statute upon which compensation may be denied on account of the fault of the employee is when the injury is occasioned by his intoxication or willful intention to injure himself or another.' Thus, except as expressly provided in the statute *634 (as in section 97-12, which is not involved here), fault has no place in the workers' compensation system.
Hassell v. Onslow Cty. Bd. of Educ. , 362 N.C. 299, 304, 661 S.E.2d 709, 713 (2008) (internal citations and brackets omitted).
Because the Commission apparently misapplied the law and made contradictory findings of fact that preclude a resolution as a matter of law, we remand the matter to the Commission for redetermination based on the correct legal standards.
This is hardly the first decision by an appellate court in North Carolina remanding a case to the Full Commission to redetermine issues of fact and law because the Commission's opinion and award reflected an incorrect legal standard. "If the findings of the Commission are insufficient to determine the rights of the parties, the appellate court may remand to the Industrial Commission for additional findings." Lanning v. Fieldcrest-Cannon, Inc ., 352 N.C. 98, 106, 530 S.E.2d 54, 60 (2000) (citation omitted). " 'The evidence tending to support [the] plaintiff's claim is to be viewed in the light most favorable to [the] plaintiff, and [the] plaintiff is entitled to the benefit of every reasonable inference to be drawn from the evidence.' " Id. at 106, 530 S.E.2d at 60 (quoting Adams v. AVX Corp. , 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998) ).
In Ballenger , 320 N.C. at 157-58, 357 S.E.2d at 685, our Supreme Court modified a decision of this Court affirming a decision of the Commission in part but remanding the case to the Commission because the Commission employed an incorrect standard for resolving conflicting medical testimony. This Court mandated a remand "for a determination whether, uninfluenced by the ... misstatement, the Commission actually and dispassionately weighed the evidence before it concluded there was sufficient evidence to support a finding in plaintiff's favor." Id. at 157-58, 357 S.E.2d at 685 (internal quotation marks omitted) (alterations in original). The Supreme Court held that this Court erred "in not remanding to the Commission for new findings of fact and conclusions of law applying the correct legal standard." Id. at 158, 357 S.E.2d at 685. Like the Supreme Court in Ballenger , this Court expresses no opinion as to the merits of Mr. Weaver's case. "We hold only that the [F]ull Commission must make a complete redetermination," id. at 158, 357 S.E.2d at 685, based upon the correct legal standard.
A series of decisions by this Court in a case outside the context of workers' compensation is instructive. In In re A.B ., 239 N.C.App. 157, 172, 768 S.E.2d 573, 581-82 (2015) (" A.B. I "), this Court reversed an order terminating parental rights because "[t]he contradictory nature of the *635 trial court's findings of fact and conclusions of law prohibit this Court from adequately determining *141 if they support the court's conclusions of law ..." and remanding to the trial court "for entry of a new order clarifying its findings of fact and conclusions of law." Following remand, the trial court entered a revised order terminating the respondent's parental rights. This Court affirmed that order on appeal. See In re A.B. , --- N.C.App. ----, ----, 781 S.E.2d 685, 692 (2016), review denied sub nom , 369 N.C. 182, 793 S.E.2d 695 (2016) (" A.B. II "). In A.B. II , the respondent contended that the trial court exceeded this Court's remand for a revised order "clarifying" its findings of fact because the trial court made new findings. Id. at ----, 781 S.E.2d at 692. This Court held that when read in context of the entire decision, the word "clarifying" indicates "that this Court remanded this case for the trial court to make whatever changes necessary to have an internally consistent order." Id. at ----, 781 S.E.2d at 692.
To make sure our mandate is clear, we remand this matter to the Commission to weigh the evidence and redetermine the factual and legal issues necessary to resolve Mr. Weaver's claim. It is not necessary that the Commission receive any additional evidence, although in its discretion it may do so. The Commission is not precluded from restating findings and conclusions from the Opinion and Award we have set aside, if those findings and conclusions are consistent with this opinion, based on competent evidence, and reflect that the Commission has applied the correct legal standards.
Conclusion
For all of the reasons stated above, we set aside the Commission's Opinion and Award and remand this matter for further proceedings consistent with this opinion.
VACATED and REMANDED.
Judge BRYANT concurs. Judge TYSON dissents with separate opinion.

The transcript of proceedings before the Commission uses this spelling of the term which most commonly refers to a circular fried dough pastry. "Donut" is the predominant spelling, while "doughnut" is a less common spelling. "Donut." Merriam-Webster Online Dictionary . 2017. http://www.merriam-webster.com (19 Apr. 2017).