IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA15-938

Filed: 19 April 2016

From the North Carolina Industrial Commission, I.C. No. 13-706519

JOSEPH W. BARNETTE, Employee, Plaintiff,

v.

LOWE'S HOME CENTERS, INC., Employer, SELF-INSURED (SEDGWICK CLAIMS MANAGEMENT SERVICES, INC., Administrator), Defendant.

Appeal by Plaintiff from opinion and award entered 15 April 2015 by the North Carolina Industrial Commission. Heard in the Court of Appeals 28 January 2016.

*Wallace and Graham, PA., by Whitney V. Wallace, for Plaintiff.*

*Cranfill Sumner & Hartzog LLP, by Jaye E. Bingham-Hinch, for Defendant.*

STEPHENS, Judge.

In this appeal by an injured employee from an opinion and award of the North Carolina Industrial Commission denying compensation, we apply our well established standard of review and hold that, while certain of the findings of fact challenged by the employee are supported by competent evidence, the Commission's legal conclusion that the employee failed to show that his injury "resulted from a fortuitous event, an interruption of his work routine, or an unusual task" and, thus, failed to establish that he sustained an injury by accident is *not* supported by the findings of fact. Accordingly, we reverse and remand.

*Factual and Procedural Background*

Plaintiff Joseph W. Barnette began working as a delivery driver for Defendant Lowe's Home Centers, Inc. ("Lowe's") in 2004. At the time he began his employment with Lowe's, Barnette had pre-existing back problems that had required medical treatment from about 2000 or 2001 forward. On 8 August 2012, Barnette was working with another Lowe's employee, Ron Alcorn, to deliver a refrigerator to a home on Bald Head Island. Like many homes on the island, this home had a so-called "reverse" floor plan with the kitchen on an upper floor. Barnette testified that the delivery was difficult, requiring him and Alcorn to carry a large refrigerator up a narrow twisting flight of stairs. At the top of the stairs, Barnette and Alcorn discovered that the refrigerator would not fit through the final turn of the stairwell and, thus, they had to take the refrigerator immediately back down the stairs. Barnette alleged that, near the bottom of the stairs, he lost all feeling in his right hand and forearm. Barnette shifted the weight of the refrigerator to his other hand and continued carrying the appliance down the stairs. The evidence was conflicting about whether Barnette mentioned his arm and hand symptoms to Alcorn at that moment. Feeling returned to Barnette's hand in about 20 to 30 minutes. Alcorn drove Barnette back to the local Lowe's. Barnette testified that he reported to the manager on duty that he had hurt his hand, but could not remember whether he mentioned "all the details . . . ."

On 15 January 2013, Barnette filed a Form 18 asserting that he had "injured his right arm/elbow/hand when performing [an] unusually difficult delivery of a refrigerator up and down a narrow set of stairs" on 8 August 2012. On 19 March 2013, Lowe's filed a Form 61 Denial of Workers' Compensation Claim and Amended Denials of Workers' Compensation Claim on 20 June and 7 November 2013. Barnette filed a Form 33 Request that Claim be Assigned for Hearing on 5 April 2013 and an amended Form 18 on 5 November 2013. On 7 January 2014, a hearing was held before the deputy commissioner, who filed an opinion and award on 4 August 2014 denying Barnette benefits for failure to show he sustained an injury by accident. Barnette appealed to the Full Commission ("the Commission"), and, on 15 April 2015, the Commission affirmed the deputy commissioner's opinion and award with modifications, still denying Barnette compensation. From the Commission's opinion and award, Barnette appeals.

*Discussion*

Barnette argues that the Commission erred in (1) making findings of fact 4, 6, and 7, and (2) finding and concluding that Barnette's injuries were not the result of an accident. We reverse and remand.

*I. Standard of Review*

On appeal, we review an opinion and award in a workers' compensation case to determine "whether there is any competent evidence in the record to support the

Commission's findings and whether those findings support the Commission's conclusions of law." *Oliver v. Lane Co.*, 143 N.C. App. 167, 170, 544 S.E.2d 606, 608 (2001) (citation omitted). Thus, our "duty goes no further than to determine whether the record contains any evidence tending to support the finding." *Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998) (citation and internal quotation marks omitted), *rehr'g denied*, 350 N.C. 108, 532 S.E.2d 522 (1999). "[T]he Commission is the sole judge of the credibility of witnesses and may believe all or a part or none of any witness's testimony . . . ." *Harrell v. J.P. Stevens & Co., Inc.*, 45 N.C. App. 197, 205, 262 S.E.2d 830, 835 (citation omitted), *disc. review denied*, 300 N.C. 196, 269 S.E.2d 623 (1980). The Commission's findings of fact are conclusive on appeal if supported by competent evidence, even if there is evidence to support contrary findings. *Pittman v. Int'l Paper Co.,* 132 N.C. App. 151, 156, 510 S.E.2d 705, 709 (citation omitted), *affirmed per curiam*, 351 N.C. 42, 519 S.E.2d 524 (1999). "The Commission's findings of fact may be set aside on appeal only when there is a *complete* lack of competent evidence to support them." *Jones v. Candler Mobile Village*, 118 N.C. App. 719, 721, 457 S.E.2d 315, 317 (1995) (citation omitted; emphasis added). Findings of fact unchallenged by the appellant are presumed to be supported by competent evidence on appeal. *Cooper v. BHT Enters.*, 195 N.C. App. 363, 364-65, 672 S.E.2d 748, 751 (2009) (citation omitted). Where conclusions of law are not supported by the findings, we must reverse those portions of the opinion and award,

remanding to the Commission for entry of conclusions of law that are supported. *See, e.g., Goodrich v. R.L. Dresser, Inc.*, 161 N.C. App. 394, 403, 588 S.E.2d 511, 517 (2003).

*II. Findings of fact 4, 6, & 7*

Barnette first argues that no competent evidence supports the Commission's findings of fact 4, 6, and 7. We are not persuaded.

Specifically, Barnette challenges the following portions of these findings of fact as not supported by competent evidence:

> 4.   [Barnette] could not recall whether he immediately reported his injury to Mr. Alcorn. . . .
>
> . . . .
>
> 6.   Mr. Alcorn recalled . . . no specific injury, pain, or symptoms reported by [Barnette] at that time. Mr. Alcorn testified that this was not the first time he witnessed [Barnette's] weakness, which he attributed to [Barnette's] age.
>
> 7.   Defendant's Assistant Manager, Krystal Webb, . . . did not recall [Barnette] reporting how the numbness started . . . .

On appeal, Barnette cites various portions of the testimony before the Commission that appear to contradict the findings of fact made by the Commission or which would support different findings of fact. However,

> it is [not] the role of this Court to comb through the testimony and view it in the light most favorable to the [appellant], when the Supreme Court has clearly instructed us to do the opposite. Although by doing so, it is possible to find a few excerpts that might be speculative,

this Court's role is not to engage in such a weighing of the evidence.

*Alexander v. Wal-Mart Stores, Inc.*, 166 N.C. App. 563, 573, 603 S.E.2d 552, 558 (2004) (Hudson, J., dissenting), *reversed per curiam for the reasons stated in the dissenting opinion*, 359 N.C. 403, 610 S.E.2d 374 (2005). Having engaged in our proper review, we conclude that each of the factual findings challenged by Barnette is supported by competent evidence in the record

For example, in contending that no competent evidence supports the above-quoted portion of finding of fact 4, Barnette draws our attention to his testimony that he told Alcorn that he needed to see a doctor when his hand went numb as the two men carried the refrigerator to the bottom of the stairs. However, our review of the record reveals that, on direct examination, Barnette also testified that, when he suddenly lost all feeling in his right hand and forearm, "it scare[d] me a little bit. It scare[d] me a lot. And so I—I can't recall whether I tell [Alcorn] something's going on at that juncture or not." Likewise, on cross-examination, Barnette reiterated that, "while I was lifting [the refrigerator] and as I sat it down, . . . I had to let go. I had nothing left. And I cannot remember whether I communicated that with [Alcorn] or not, at the time." This testimony supports the Commission's factual finding that Barnette "could not recall whether he immediately reported his injury to Mr. Alcorn. . . ."

Similarly, the part of finding of fact 6 stating that Alcorn "recalled . . . no specific injury, pain, or symptoms reported by [Barnette] at that time" is supported by Alcorn's response when asked whether he immediately realized Barnette was having symptoms as a result of his alleged injury. Alcorn testified that he knew Barnette was "having trouble holding that weight and taking it down one step at a time. So, he had said he's having difficulty doing it," but did not describe any symptoms until he and Alcorn "got back on the barge [to return to the mainland from Bald Head Island]." In addition, when asked whether Barnette had ever exhibited any physical difficulty in performing his job, Alcorn replied, "Just a weakness at times. I mean, it's—it's a hard job. . . . He's an old man. I'm sorry." That evidence supports the finding that "Mr. Alcorn testified that this was not the first time he witnessed [Barnette's] weakness, which he attributed to [Barnette's] age."

Finding of fact 7, that "Krystal Webb, . . . did not recall [Barnette] reporting how the numbness started[,]" is supported by Webb's response to the question, "Did [Barnette] report to you how the pain started or the numbness started?":

> I don't recall. It was on the job, per se, I assumed that it could have been a job related injury. But that was not discussed between us. It was just the fact that he needed to go to this appointment the next day. So, I—I don't really recall it being on the job injury. That—that wasn't discussed.

We thus overrule Barnette's challenge to findings of fact 4, 6, and 7. We address his challenge to a portion of denominated finding of fact 25, along with the Commission's closely related conclusion of law 4, in section III of this opinion.

*III. Denominated finding of fact 25 and conclusion of law 4*

Barnette argues that a portion of denominated finding of fact 25—that he "failed to show that his right arm condition resulted from a fortuitous event, an interruption of his work routine, or an unusual task. . . . [r]ather, [than while he was] performing his usual, strenuous job in its usual way"—and related conclusion of law 4—that, as a result, Barnette "failed to prove that his injury resulted from an 'accident' "—are not supported by the Commission's other findings of fact. We agree.

As an initial matter, we note that the part of denominated finding of fact 25 to which Barnette objects is actually a legal, rather than a factual, determination. "[A]ny determination requiring the exercise of judgment or the application of legal principles is more properly classified a conclusion of law. Any determination reached through logical reasoning from the evidentiary facts is more properly classified a finding of fact." *In re Helms*, 127 N.C. App. 505, 510, 491 S.E.2d 672, 675 (1997) (citations and internal quotation marks omitted). Whether Barnette's "right arm condition resulted from a fortuitous event, an interruption of his work routine, or an unusual task" was a determination requiring "the application of legal principles"—to wit, the definition of "accident" as developed in our State's worker's compensation

jurisprudence—and, thus, it is a conclusion of law. *See id.* Regardless of how they may be labeled, we treat findings of fact as findings of fact and conclusions of law as conclusions of law for purposes of our review. *See, e.g., N.C. State Bar v. Key*, 189 N.C. App. 80, 88, 658 S.E.2d 493, 499 (2008) ("[C]lassification of an item within [an] order is not determinative, and, when necessary, the appellate court can reclassify an item before applying the appropriate standard of review."). Accordingly, we must consider whether the challenged portion of denominated finding of fact 25 and conclusion of law 4 are supported by the Commission's other findings of fact. *See Oliver*, 143 N.C. App. at 170, 544 S.E.2d at 608 (citation omitted).

Under the Worker's Compensation Act ("the Act"), an employee

> is entitled to compensation for an injury only if (1) it is caused by an accident, and (2) the accident arises out of and in the course of employment. . . .
>
> [The Act] defines injury to mean only injury by accident arising out of and in the course of the employment. Our Supreme Court has defined the term accident as used in the . . . Act as an unlooked for and untoward event which is not expected or designed by the person who suffers the injury; the elements of an accident are the interruption of the routine of work and *the introduction thereby of unusual conditions likely to result in unexpected consequences.*

*Shay v. Rowan Salisbury Sch.*, 205 N.C. App. 620, 624, 696 S.E.2d 763, 766 (citations, internal quotation marks, and some brackets omitted; emphasis added), *appeal dismissed*, 364 N.C. 435, 702 S.E.2d 216 (2010). "[U]nusualness and unexpectedness are [the] essence" of an accident under the Act. *Smith v. Cabarrus Creamery Co.*, 217

N.C. 468, 472, 8 S.E.2d 231, 233 (1940). "If an employee is injured while carrying on his *usual tasks in the usual way* the injury does not arise by accident. An accidental cause will be inferred, however, when an interruption of the work routine and the *introduction thereby of unusual conditions likely to result in unexpected consequences occurs.*" *Gunter v. Dayco Corp.*, 317 N.C. 670, 673, 346 S.E.2d 395, 397 (1986) (citations omitted; emphasis added).

This rule applies even where the usual tasks of an employee's work are physically awkward, strenuous, or demanding. For example, in *Porter v. Shelby Knit, Inc.*, the injured employee was a knitter whose usual work "duties included doffing, a task which entailed pulling rods from rolls of cloth." 46 N.C. App. 22, 23, 264 S.E.2d 360, 361 (1980) (internal quotation marks omitted). Because the evidence showed "that, on the occasion of [the] plaintiff's injury[,] withdrawal of the rod was *unusually difficult* because the roll of cloth was extra tight, . . . . [and, as a result,] the effort which [the] plaintiff exerted was *unusual*[,]" this Court affirmed the Commission's conclusion that her injury was the result of an accident. *Id.* at 27, 264 S.E.2d at 363 (emphasis added). The Court reasoned that unusual conditions, to wit, the extra tightness of the roll requiring unusual effort and exertion, constituted an "interrupti[on of] what was [the] plaintiff's normal work routine. . . ." *Id.*

Likewise, in *Calderwood v. Charlotte-Mecklenburg Hosp. Auth.*, the injured employee was a labor and delivery nurse whose patients frequently received epidural

blocks that left them in need of the nurse's help to raise their legs during childbirth. 135 N.C. App. 112, 113, 519 S.E.2d 61, 62 (1999), *disc. review denied*, 351 N.C. 351, 543 S.E.2d 124 (2000). This Court reversed the Commission's conclusion that the nurse's injury was not the result of an accident, noting that, when injured, she had been performing her usual strenuous duties of helping a patient who had received an epidural lift her legs, but that unusual conditions had interrupted her normal work routine. *Id.* at 116, 519 S.E.2d at 63-64. Specifically, "the undisputed evidence [was] that [the p]laintiff had never in her eleven years of work with [the employer] assisted a patient in child delivery where she was required, without any assistance from the patient, to lift the leg(s) of the patient, especially a patient weighing 263 pounds." *Id.* at 115-16, 519 S.E.2d at 63.

In a case involving an even more physically demanding normal work routine, this Court concluded that a compensable injury by accident occurred where a professional football player, "engaging in his *normal work duty* of blocking an offensive lineman, . . . was injured because he was forced by another player into *utilizing an unusual and awkward blocking or work technique that was not normally used* in [the player's] normal work routine." *Renfro v. Richardson Sports, Ltd. Partners*, 172 N.C. App. 176, 183, 616 S.E.2d 317, 324 (2005) (emphasis added), *disc. review denied*, 360 N.C. 535, 633 S.E.2d 821 (2006). In that case, the Commission's critical findings of fact were:

9.      At practice on August 7, 2001, [the] plaintiff was playing defense at a linebacker position.  During a particular play, [the] plaintiff became engaged by a block from an offensive lineman.

10.      At the point when the offensive player engaged [the] plaintiff with the block, the impact caused [the] plaintiff's left hand and wrist to be moved down and around, forcing it into what [the] plaintiff described as an awkward position.

11.      It was unexpected and unusual for the offensive player to block [the] plaintiff with an impact that caused his left hand and wrist into an awkward position.  At the time of injury, [the] plaintiff was engaged in an activity within the scope of his employment contract and was taking reasonable measures to protect himself from injury, given the nature of the game.  [The p]laintiff was required to do what he was doing at the time of injury and had no choice but to perform his job as best he could, notwithstanding the risk of injury.

*Id.* at 181-82, 616 S.E.2d at 323.  This Court held that these findings of fact supported the Commission's conclusion that, "[a]lthough an injury sustained while playing football may not be an unusual occurrence, such injury [under the circumstances present here] is not a probable, intended consequence of the employment and constituted an unlooked for and untoward event that was not expected or designed by [the] plaintiff."  *Id.* at 182, 616 S.E.2d at 324.

Regarding the work activity Barnette was engaged in when he sustained his injury, the Commission found as fact:

1.      At the time of hearing before the Deputy Commissioner, [Barnette] was 59 years old.  He has a high

- 12 -

school diploma. [Barnette] worked as a delivery driver for Defendant-Employer from November 2004, through August 2012. [Barnette] estimated his deliveries consisted of approximately 80% to 85% appliances and that he often delivered with co-worker, Ron Alcorn.

2. On August 8, 2012, [Barnette] testified that he and Mr. Alcorn delivered a side-by-side refrigerator to a home on Bald Head Island ("BHI") after making four or five other deliveries. After removing the doors of the refrigerator, [Barnette] and Mr. Alcorn lifted the refrigerator up a winding staircase leading to the second-story kitchen of the home. [Barnette] testified that *he and Mr. Alcorn were unable to make the final turn into the kitchen and decided to head back down the stairs, when his right hand went completely numb, roughly three-fourths of the way down the stairs*. [Barnette] testified that he immediately experienced numbness, but no pain, and that he used his left arm to help Mr. Alcorn finish the descent.

3. It was not uncommon for [Barnette] to deliver large appliances upstairs at homes like the one in question at BHI, which have "reverse" floor plans, with the kitchen on a second or third level. He described the homes on BHI as "tight" and with narrow staircases. Regarding the home in question, [Barnette] testified that *the staircase was not a standard staircase and was unusually tight*.

. . . .

5. Ron Alcorn testified at the hearing before the Deputy Commissioner that he and [Barnette] worked together four to five times per week before [Barnette's] workplace injury and that about 75% of the time, an old refrigerator will have to be removed from the home to make room for the new one. Mr. Alcorn recalled the day of the incident, stating that *he and [Barnette] only made it two-thirds of the way up the staircase with the new refrigerator when they decided it was not going to fit and that they should return downstairs. Mr. Alcorn testified that the*

> *staircase involved in this claim was narrow, that most of*
> *the staircases at the homes at BHI were "32-36" inches wide,*
> *but this staircase was "29-30" inches wide.*

(Emphasis added). These findings of fact indicate that, like the professional football player in *Renfro*, Barnette's usual work routine and normal work duties were physically strenuous, and that those duties often included the delivery of large appliances, like refrigerators, to homes on BHI with reverse floor plans and narrow staircases and the removal of customers' old refrigerators back down the staircases. However, the above-quoted findings of fact also plainly establish "the introduction . . . of unusual conditions likely to result in unexpected consequences[,]" *see Gunter*, 317 N.C. at 673, 346 S.E.2d at 397 (citations omitted), during the delivery when Barnette sustained his injury.

Specifically, the uncontradicted evidence and findings of fact 2, 3, and 5 establish that, at the home where Barnette was injured, "the staircase was not a standard staircase and was *unusually* tight" such that, instead of carrying the new refrigerator up the stairs, setting it down, and then later carrying an old refrigerator down the stairs, Barnette and Alcorn "only made it two-thirds of the way up the staircase with the new refrigerator when they decided it was not going to fit and that they should return downstairs." Thus, the "unusual condition[]" of the narrow, non-standard staircase "result[ed] in [the] unexpected consequence[]" of Barnette having to hold and carry the refrigerator two-thirds of the way up the staircase and then

back down again without a break or the opportunity to reposition his hold on the appliance to better accommodate the descent. *See id.* Simply put, Barnette, while "engaging in his normal work duty of [delivering a refrigerator to a second-floor kitchen by means of a staircase], . . . was injured because he was forced by [the unusual narrowness of the staircase] into utilizing an unusual and awkward . . . work technique that was not normally used in his normal work routine[,]" to wit, having to carry the new refrigerator back down the unusually narrow staircase without a break or pause. *See Renfro,* 172 N.C. App. at 183, 616 S.E.2d at 324.

Plainly then, the portion of denominated finding of fact 25 stating that Barnette "failed to show that his right arm condition resulted from a fortuitous event, an interruption of his work routine, or an unusual task. . . . [r]ather, [than while he was] performing his usual, strenuous job in its usual way" is not supported by the Commission's findings of fact 2, 3, and 5. Further, because those findings of fact establish that Barnette did not sustain his injury while "carrying on his *usual tasks in the usual wa*y[,]" but rather as a result of "an interruption of the work routine and the *introduction thereby of unusual conditions*[,]" an accidental cause must be inferred. *See Gunter*, 317 N.C. at 673, 346 S.E.2d at 397 (citations omitted). Accordingly, conclusion of law 4—that Barnette "failed to prove his injury resulted from an 'accident' "—is not supported by the Commission's findings of fact.

*Conclusion*

The Commission's challenged findings of fact 4, 6, and 7 are supported by competent evidence, *see Oliver*, 143 N.C. App. at 170, 544 S.E.2d at 608, but are not pertinent to the issue of whether Barnette's injury is compensable. Regarding compensability, unchallenged finding of fact 24 and conclusion of law 3 establish that Barnette's injury was caused by the refrigerator-moving incident during his work, thus satisfying the requirement that the injury arise out of and in the course of employment. *See Shay*, 205 N.C. App. at 624, 696 S.E.2d at 766. However, the challenged part of denominated finding of fact 25 and conclusion of law 4—that Barnette's injury was part of his normal work routine and not the result of an accident—are *not* supported by the Commission's other findings of fact. *See Gunter*, 317 N.C. at 675, 346 S.E.2d at 398. Accordingly, the Commission's opinion and award must be reversed and the matter remanded for further proceedings to determine the benefits to which Barnette is entitled as a result of his compensable injury by accident and the entry of an appropriate amended opinion and award.

REVERSED AND REMANDED.

Judges HUNTER, JR., and INMAN concur.