HUNTER, JR., Robert N., Judge.
Jasmine Lea ("Plaintiff") suffered a knee injury while assisting a bride at her place of employment, David's Bridal of Greensboro ("Defendant-Employer"). After the deputy commissioner found in Plaintiff's favor, Defendant-Employer, Hartford Casualty Insurance Company, and Broadspire (collectively "Defendants") appealed to the Full Industrial Commission ("the Commission"). The Commission issued an Opinion and Award and concluded Plaintiff failed to meet her burden to show her knee injury occurred "by accident." The Commission reversed the deputy commissioner's decision and denied Plaintiff's claim for workers' compensation benefits. We affirm.
I. Factual and Procedural Background
On 28 September 2015, Defendant-Employer filed a Form 19 (Employer's Report of Employee's Injury or Occupational Disease to the Industrial Commission). Defendant-Employer reported that on 26 September 2015, Plaintiff, who worked as a wedding consultant, suffered an injury while kneeling down to help a customer. Specifically, Plaintiff "got a cramp in her leg as she tried to stand up[.]" Hartford Casualty Insurance filed a Form 61 (Denial of Workers' Compensation Claim) denying Plaintiff was injured because "[t]here was no injury by accident."
On 9 February 2016, Plaintiff filed a Form 18 (Notice of Accident to Employer and Claim of Employee, Representative, or Dependent). Plaintiff asserted:
[she] injured her right knee while working for the defendant employer. She was assisting a customer who was a size 16 to try to fit into a size 12 wedding dress. The top of the dress fit, however, as employee was pulling down the dress over the customer's hips with great force, she lost her balance and fell, injuring her right knee.
On 6 April 2016, Plaintiff filed a Form 33 (Request that Claim be Assigned for Hearing), citing Defendant's denial of benefits as the reason for the hearing.
On 25 October 2016, Plaintiff filed a motion to suppress a statement she gave to a Broadspire representative about her injury. In support of her motion, Plaintiff asserted the following. On 30 September 2015, four days after her injury, a Broadspire representative called her. The representative recorded Plaintiff's statements about her 26 September 2015 injury. However, in Defendants' Form 61, Defendants did not attach a copy of Plaintiff's recorded statement. On 9 February 2016, Plaintiff filed her Form 18 and requested her recorded statement. Plaintiff again requested her recorded statement in her interrogatories and request for production of documents. Defendants gave Plaintiff the recorded statement on 14 June 2016. Defendants' untimely disclosure violated Rule 608 of the Industrial Commission Rules.
On 28 October 2016, Defendants filed their response to Plaintiff's motion to suppress. Defendants asserted Plaintiff's recorded statement "is dramatically inconsistent with Plaintiff's current descriptions of an occurrence she paints as an injury by accident[.]" Defendants admitted "a tardy provision did occur under Industrial Commission Rule 608[.]" However, Defendants contended the deputy commissioner should not grant Plaintiff's motion to suppress because:
the statement is otherwise admissible, the statement is critically relevant to the central issues in Plaintiff's claim, Plaintiff has not and will not be prejudiced by consideration of the statement, Defendants' tardy provision of the statement was not unreasonable in the light of the circumstances, and the Commission has ultimate discretion to allow consideration of the statement under Industrial Commission Rules 608 and 801.
Defendants further emphasized the recorded statement "offers Plaintiff's own recollections of her mechanism of injury and surrounding circumstances in one of the most probative format[s] possible in workers' compensation claims." (Emphasis in original).
On 31 October 2016, the deputy commissioner entered an order granting Plaintiff's motion to suppress. The deputy commissioner determined "Defendants have not provided any reasonable excuse for their failure to provide Plaintiff with a copy of the recorded statement within 45 days after it was first requested, nor why it was not furnished upon Plaintiff's second request." The deputy commissioner concluded "Defendants unreasonably failed to comply with Rule 608(a).[1]
On 14 November 2016, the deputy commissioner heard the case.[2] The deputy commissioner issued an Opinion and Award on 19 May 2017, concluding Plaintiff suffered a compensable injury to her right knee and ordered Defendants to pay Plaintiff temporary total disability benefits, permanent partial disability benefits, and medical expenses. Defendants gave proper notice of appeal to the Commission on 1 June 2017.
On 25 October 2017, the Commission heard the case. The Commission issued its Opinion and Award on 18 April 2018, overturning the deputy commissioner's decision and denying Plaintiff's claim for workers' compensation benefits. The Commission found the following facts.
Plaintiff, a twenty-seven year old female at the time of the Commission's hearing, worked as a stylist at Defendant-Employer beginning on 6 October 2014. As a stylist, Plaintiff's duties included:
meeting and greeting the bridal customers; giving the bride a tour of the bridal side of the store; showing the bride different styles of dresses; explaining the different dress styles, designers, and brands; measuring the bride's bust, waist, and hips; providing a bra and slip as an undergarment for the dress being tried on; finding dresses closest in size to the bride's measurements; dressing the bride; and taking the bride out to her family to show off the dress being tried.
While assisting a bride trying on dresses, the "normal technique is for the stylist to stand behind the bride and first pull the dress down over the bride's upper body, then the lower body." If the dress fits tightly, the stylist would pull and turn the dress to fit past the bride's hips. "It is normal for a stylist to bend or kneel down in order to pull a dress down on the bride."
On 26 September 2015, Plaintiff assisted a bride in trying on different bridal gowns. The bride wanted to try on a mermaid-style dress, a style that "fits tightly at the bust and down the body to the mid-calf area or near the ankle ... [and then] flares outward." The gown the bride wanted to try on was not available in the bride's size, so Plaintiff had to try to fit a dress two sizes down on the bride. When putting on a dress that is too small, "it is normal practice ... for the stylist to assist the bride with trying on the smaller-sized dress and clip the dress to the bride's undergarments, rather than trying to zip up the dress."
When Plaintiff put the bride in the mermaid-style gown, the dress stopped at the bride's waist. Plaintiff got down on both of her knees and "began pulling and turning the dress" to get past the bride's hips. However, the dress still did not fall. Plaintiff adjusted her position. She kept her left knee on the ground and put her right foot down, which Plaintiff described as an "awkward position[.]" Plaintiff pulled on the dress and pushed up with her right knee. As she "pull[ed] and tugg[ed,]" Plaintiff fell over. She felt a "pop" and "intense" pain in her knee. Plaintiff's testimony established the way she assisted the bride during the fitting was not "unusual[.]"
Pamela Salter, Plaintiff's supervisor, spoke with Plaintiff and completed an accident report. The report stated Plaintiff "got a cramp in her leg" when trying to stand up and "the muscles behind her leg would not straighten out." Salter tried to help Plaintiff by massaging "out" the cramp, but she did not feel a cramp in Plaintiff's leg. Plaintiff could not bend her leg and was in pain.
Plaintiff went to a hospital, where personnel X-rayed her leg. The X-rays showed she did not suffer a broken bone. Doctors prescribed pain medication and instructed her to follow-up with an orthopedic doctor.
On 29 September 2015, Plaintiff went to Dr. Michael Xu, an orthopedic at Peidmont Orthopedics, to address her right knee pain. Plaintiff told Dr. Xu "she bent down and, when she went to stand up, she heard a pop in the back of her knee and she 'went down immediately.' " After treating Plaintiff for pain, Dr. Xu ordered an MRI for Plaintiff. The MRI "showed findings suspicious" for deep vein thrombosis ("DVT") and a complex bucket-handle tear of the lateral meniscus. Dr. Xu then ordered a CT scan, which confirmed Plaintiff suffered from a pulmonary emboli.[3]
On 30 September 2015, a claims adjuster spoke with Plaintiff. Plaintiff described the incident as:
I was dressing my bride. I was on my knees pulling the dress down from, um, pullin' the dress down onto her. I went to stand up. I heard somethin' pop in my knee, and I fell back down. I went to stand up again. I heard it pop again. Um, I thought it was a cramp in my leg, so I tried to crawl to the wall to put pressure against my foot to ease the cramp. And that made it worse .... Miss Pam [Salter] walked by and asked me if I was OK. I told her I think I got, caught a cramp in my leg. And it ... that's pretty much it.
(Ellipses in original). Plaintiff clarified she was not lifting anything when the injury occurred and "was just standing up to finish fixin' [her] bride."
On 19 October 2015, Plaintiff had surgery to remove the pulmonary emboli. After ten days in the hospital, Plaintiff went to Piedmont Orthopedics, this time as a patient of Dr. Gregory Scott Dean. Dr. Dean recommended Plaintiff have surgery on her right knee, due to the meniscal tear. On 17 November 2015, Dr. Dean performed the surgery. Plaintiff did not return to work for four weeks.
On 9 February 2016, Plaintiff filed a Form 18. In this form-for the first time-Plaintiff alleged she injured herself while she "was pulling down the dress over the customer's hips with great force, [and] she lost her balance and fell, injuring her right knee." Plaintiff did not include any allegation "she was kneeling in any way" when the injury occurred. Although she alleged "great force" in her Form 18, Plaintiff did not testify at the hearing about the amount of force she used on 26 September 2015 or how much force she typically used when fitting dresses on brides.
The parties deposed Dr. Dean, who Plaintiff tendered as an expert specializing in orthopedic surgery. Initially, Dr. Dean testified if Plaintiff kept her left knee on the floor and her right foot flat on the floor while pushing upward on the right foot, all while trying to pull a dress down on a bride, the "detailed history" "correlates" with Plaintiff's injury. However, Plaintiff's "detailed history" at the hearing before the deputy commissioner was different than the history she gave at Piedmont Orthopedics. When at Piedmont Orthopedics, Plaintiff described the injury as "having bent down and hearing a pop or snap in the knee when trying to stand up, then falling down."
The Commission found Plaintiff's testimony about how the injury occurred "not credible." The Commission also found Plaintiff "was performing her normal job duties when she felt and heard a pop in her right knee when attempting to stand from a kneeling position."
The Commission concluded kneeling to assist brides is a "normal part" of Plaintiff's job, and on 26 September 2015, Plaintiff performed her job duties as part of her "normal work routine[.]" Accordingly, the Commission concluded, the "work incident did not constitute an interruption of plaintiff's normal work routine, and plaintiff has failed to demonstrate that her right knee injury occurred 'by accident.' " The Commission stated, even assuming Plaintiff's descriptions of the accident were credible, Plaintiff failed to establish the positions and movements she made on 26 September 2015 were "unusual," such to be an accident. Accordingly, the Commission denied Plaintiff workers' compensation benefits. Plaintiff filed timely notice of appeal on 24 April 2018.
II. Jurisdiction
This Court has jurisdiction over this appeal from the Commission pursuant to N.C. Gen. Stat. §§ 7A-29(a), 97-86 (2017).
III. Standard of Review
Under N.C. Gen. Stat. § 97-85, the Commission may receive further evidence "if good ground be shown[.]" N.C. Gen. Stat. § 97-85(a) (2017). The Commission's power to receive additional evidence is a "plenary power[ ] to be exercised in the sound discretion of the Commission." Lynch v. M.B. Kahn Constr. Co. , 41 N.C. App. 127, 130, 254 S.E.2d 236, 238 (1979). "Specifically, we hold that whether 'good ground be shown therefore' in any particular case is a matter within the sound discretion of the Commission, and the Commission's determination in that regard will not be reviewed on appeal absent a showing of manifest abuse of discretion." Id. at 130-31, 254 S.E.2d at 238.
We review an appeal from the Commission to determine whether the findings of fact are supported by competent evidence, and whether the findings of fact support the conclusions of law. Hassell v. Onslow Cty. Bd. of Educ ., 362 N.C. 299, 305, 661 S.E.2d 709, 714 (2008). The Commission "is the sole judge of the credibility of the witnesses and the weight of the evidence." Id . at 605, 661 S.E.2d at 714. Therefore, "[t]he Commission's findings of fact are conclusive on appeal if supported by competent evidence 'notwithstanding evidence that might support a contrary finding.' " Reaves v. Indus. Pump Serv ., 195 N.C. App. 31, 34, 671 S.E.2d 14, 17 (2009) (quoting Hobbs v. Clean Control Corp ., 154 N.C. App. 433, 435, 571 S.E.2d 860, 862 (2002) ). The Commission "is not required ... to find facts as to all credible evidence. That requirement would place an unreasonable burden on the Commission. Instead the Commission must find those facts which are necessary to support its conclusions of law." Peagler v. Tyson Foods, Inc. , 138 N.C. App. 593, 602, 532 S.E.2d 207, 213 (2000) (internal quotation marks and citation omitted) (ellipsis in original). Unchallenged findings of fact are binding on appeal. Allred v. Exceptional Landscapes, Inc. , 227 N.C. App. 229, 232, 743 S.E.2d 48, 51 (2013). "The Commission's conclusions of law are reviewable de novo ." Id . at 232, 743 S.E.2d at 51.
IV. Analysis
We address Plaintiff's appeal in three parts: (A) whether the Commission abused its discretion in allowing Plaintiff's recorded statement into evidence; (B) whether competent evidence supports the Commission's findings of fact; and (C) whether the Commission's findings support its conclusions of law.
A. Plaintiff's Recorded Statement
Rule 608 of the Industrial Commission Rules provides:
(a) Upon the request of the employer or the employer's agent to take a written or a recorded statement, the employer or the employer's agent shall advise the employee that the statement may be used to determine whether the claim will be paid or denied. Any employee who gives his or her employer, the employer's carrier, or any agent of the employer either a written or recorded statement of the facts and circumstances surrounding his or her injury shall be furnished a copy of the statement within 45 days after a request by the employee. Further, any employee who gives a written or recorded statement of the facts and circumstances surrounding his or her injury shall, without request, be furnished a copy of the statement within 45 days after the filing of a Form 33 Request that Claim be Assigned for Hearing.
11 NCAC 23A.0608(a) (2017). If a party "unreasonable fails" to provide as such, then the deputy commissioner may prohibit the party from introducing the statement into evidence. 11 NCAC 23A.0608(b). When the Commission decides whether to accept new evidence, "the Commission should consider all the circumstances of the case, including the delay involved in taking additional evidence, and should not encourage a lack of pre-deposition preparation by counsel or witnesses." Pittman v. Int'l Paper Co. , 132 N.C. App. 151, 156, 510 S.E.2d 705, 708 (1999).
Here, Plaintiff gave her statement to a Broadspire representative on 30 September 2015. On 9 February 2016, Plaintiff wrote a letter and requested a copy of her statement. On 10 March 2016, Plaintiff served discovery and again requested her statement. Plaintiff filed a Form 33 (Request that Claim be Assigned for Hearing) on 6 April 2016. On 13 June 2016, Plaintiff once again requested the statement. On 14 June 2016, Defendants gave Plaintiff a copy of her statement.
In its Opinion and Award, the Commission thoroughly considered all the circumstances of Defendants' untimely disclosure. The Commission noted "Defendants produced the recorded statement to plaintiff in June 2016, a full five months prior to the November 14, 2016, full evidentiary hearing." Although the Commission found and concluded Defendants failed to timely comply with Rule 608, it exercised its discretion and admitted the recorded statement into evidence. Upon our review, we conclude this decision is not a manifestly unsupported by reason and the Commission did not abuse its discretion.
B. Challenged Findings of Fact
Plaintiff argues findings of fact 3, 9, 12, 13, 25, 26, 38, 39, and 40 are not supported by competent evidence.
1. Finding of Fact 3
Plaintiff contends the finding is unsupported by the evidence because the only evidence at the hearing about a stylist's duties was Plaintiff's testimony, and she did not describe normal duties as the Commission found. The finding states:
3. When trying on wedding dresses, the normal technique for the stylist is to stand behind the bride and first pull the dress down over the bride's upper body, then the lower body. Certain types of dresses, such as trumpet or mermaid style dresses, are tighter fitting, which may require the stylist to pull and turn the dress to move it down past the bride's hips. It is normal for a stylist to bend or kneel down in order to pull a dress down on the bride.
At the hearing, Defendants asked Plaintiff if her job as a stylist included bending and pulling down dresses. Plaintiff answered affirmatively. Defendant-Employer's job description for a stylist included the need to be able "to climb, balance, stoop, kneel, crouch, and reach with arms ... [and] to bend, twist[ ] and stand[.]" Thus, we conclude the Commission's finding regarding what are normal duties for a stylist is supported by competent evidence.
2. Findings of Fact 9, 38, and 39
Next, Plaintiff contends findings of fact 9, 38, and 39 are in error because the Commission ignored the "only competent medical expert evidence" about Plaintiff's injuries. The relevant findings are as follows:
9. On cross examination, plaintiff asserted that she told her medical providers that she twisted her knee on September 26, 2015, explaining, "I stated it. Whether they wrote it, I'm not sure." But when questioned further about why her medical records do not contain a history of twisting her knee, plaintiff testified: "I'm not a doctor. I wouldn't know if I twisted my knee." Plaintiff's testimony that she reported twisting her knee to her medical providers is inconsistent with her later testimony that she would not have known this information because she is not a doctor.
...
38. As to plaintiff's DVT, Dr. Dean initially testified that plaintiff's immobilization of the knee during treatments for her meniscal tear could have contributed to that condition; however, on cross-examination, he noted that plaintiff could have had DVT at the time of her injury, which would not have been caused by immobilization.
39. The Commission finds plaintiff's testimony as to her mechanism of injury on September 26, 2015, not credible. Plaintiff's explanation of her mechanism of injury to Ms. Salter, in her recorded statement, and to Piedmont Orthopedics, both on and shortly after the incident occurred, involved feeling and hearing a pop in her knee upon attempting to stand from a bent over or kneeling position and feeling a cramp in her leg. Plaintiff's early reports did not include any descriptions of forceful pulling and turning, or transitioning to an "awkward position" on one knee, until after the claim denial for want of describing an injury "by accident." Subsequently, plaintiff modified her description of the mechanism of injury when filing her Form 18 and in her hearing testimony before the Deputy Commissioner. To the extent plaintiff's later statements made in her Form 18 and hearing testimony differ from the statement plaintiff provided to Ms. Salter, in her recorded statement, and to the medical providers at Piedmont Orthopedics on and shortly after the date of injury, the Commission affords those variations little weight for want of credibility.
At his deposition, Dr. Dean opined the 26 September 2015 incident caused Plaintiff's meniscus tear and immobilization. Dr. Dean further opined Plaintiff's immobilization caused or contributed to her DVT. However, on cross-examination, Dr. Dean discussed how long periods of travel and other factors can contribute to DVT. Dr. Dean further testified:
Q. Okay. So, Dr. Dean, is it possible that the DVT actually developed prior to this standing up incident at work based upon the fact that she has relatives that have DVT, she's on birth control, she was on a 12-hour flight somewhat in the weeks preceding this accident?
...
[Dr. Dean]: Okay. Yeah. I mean, it's possible ....
We conclude, contrary to Plaintiff's arguments, the Commission did not ignore Dr. Dean's testimony.[4] Although Dr. Dean's testimony could support a finding the 26 September 2015 incident and resulting immobilization caused DVT, the Commission did not disregard Dr. Dean's testimony and came to a different finding, which we conclude is supported by competent evidence. Coleman v. City of Winston-Salem , 57 N.C. App. 137, 141, 291 S.E.2d 155, 157 (1982) (stating the Commission cannot "ignore any of the evidence").
3. Findings of Fact 12 and 13
Plaintiff next takes issue with findings of fact 12 and 13, which state:
12. While plaintiff testified she "desired" to kneel on both knees while assisting brides, she did not testify that September 26, 2015, was the first time, or one of only a minimal number of times, that she assisted a bride while kneeling on one knee. In fact, plaintiff did not offer any testimony regarding the number of times she had previously assisted brides while kneeling on one knee. Plaintiff's testimony regarding her training and preference for kneeling on two knees does not establish that it was, in fact, unusual for plaintiff to assist a bride while kneeling on one knee. This is especially true considering plaintiff's testimony that she was required to fit many different dress styles on brides with different body types.
13. Plaintiff also did not testify that September 26, 2015, was the first time, or one of only a minimal number of times, that a dress became stuck at a bride's waist, thus requiring plaintiff to pull and turn the dress as she did on September 26, 2015. In fact, plaintiff offered no testimony regarding how frequently a dress would become stuck at a bride's waist. Given the many dress styles plaintiff was required to fit on brides with different body shapes, it cannot be assumed that it was unusual for plaintiff to pull and turn a dress as she did on September 26, 2015.
At the hearing, Plaintiff described how on 26 September 2015, she had one knee down and her other foot on the ground when trying to fit a dress on a bride. She was not trained to use this method, though. Instead, she was trained to be on both knees. However, when asked if a stylist could do the task on one knee, Plaintiff answered, "If that's the way you desire, but I didn't desire to do it that way." The Commission accurately included Plaintiff's testimony about her training and preference. However, the Commission is correct-Plaintiff did not present evidence beyond her training and preference as to the usual way to perform the task of fitting a bride in a tight dress. Thus, the Commission's finding accurately discusses Plaintiff's failure to present certain evidence, and Plaintiff's argument is without merit.
4. Finding of Fact 25
Plaintiff argues finding of fact 25 is incorrect because Plaintiff described a fall prior to filing her Form 18 on 19 February 2016. The Commission found as follows:
25. On February 9, 2016, plaintiff filed a Form 18 Notice of Accident to Employer and Claim of Employee, Representative, or Dependent . In the Form 18, plaintiff alleged that, while assisting a size 16 customer fit into a size 12 wedding dress, she "was pulling down the dress over the customer's hips with great force, she lost her balance and fell, injuring her right knee." This is the first-time plaintiff alleged a loss of balance and fall as the cause of her right knee injury. Notably, plaintiff did not document on the Form 18 that she was kneeling in any way when the onset of right knee pain occurred and she fell over.
A careful reading of the finding shows it is supported by competent evidence. While some of Plaintiff's earlier statements included the fact she fell, none of them included the summary of facts as she later stated in her Form 18 and beyond. Prior to filing her Form 18, Plaintiff stated she felt pain or heard a "pop" and then fell-the pain before the fall. Additionally, Plaintiff's early statements do not include any allegations of her losing her balance. However, in later statements, Plaintiff asserted she lost her balance and then fell, which caused her knee injury. Accordingly, this finding is supported by competent evidence.[5]
5. Finding of Fact 26
Plaintiff argues finding of fact 26 is not supported by competent evidence. The finding states:
26. Although plaintiff stated she used "great force" in her Form 18, she offered no testimony at [the] hearing to establish that the amount of force used on September 26, 2015 constituted unusual physical exertion. Specifically, plaintiff offered no testimony regarding the amount of force used on other occasions when a dress became stuck at a bride's hips.
Plaintiff argues this finding is in error because she described how on 26 September 2015, the dress became stuck on the bride and she had to twist and turn to fit the dress. While Plaintiff accurately summarizes her testimony, this testimony is not in conflict with the Commission's finding. The Commission included Plaintiff's statement of using "great force" in her Form 18. The Commission is correct Plaintiff did not present evidence of how the force she used on 26 September 2015 was unusual. Plaintiff's argument is without merit.
6. Finding of Fact 40
Lastly, Plaintiff contends finding of fact 40 is in error because her actions on 26 September 2015 were not done in Plaintiff's normal job duties. Finding of fact 40 states, "40. Based upon a preponderance of the credible evidence of record, the Commission finds that on September 26, 2015, plaintiff was performing her normal job duties when she felt and heard a pop in her right knee when attempting to stand from a kneeling position."
At the hearing, Plaintiff testified about her normal job duties, which included fitting brides in dresses. This task sometimes required her to bend or kneel if fitting a tighter dress. While Plaintiff testified she preferred to kneel on both knees, there is no testimony showing kneeling on one knee while having the other foot on the ground to try and fit a dress is an unusual stance so as to mandate a finding Plaintiff was not performing her normal job duties. Thus, competent evidence supports this finding.
In conclusion, we determine all of the challenged findings are supported by competent evidence and are binding on appeal. Next, we turn to whether the Commission's findings support its conclusions of law.
C. Challenged Conclusions of Law
Finally, Plaintiff argues the findings of fact do not support conclusions of law 3 and 4, which state:
3. Kneeling to assist brides trying on wedding dresses constituted a normal part of plaintiff's job duties and work routine with defendant-employer, as did assisting brides try on dresses smaller than their normal size when the correct size was unavailable. On September 26, 2015, plaintiff was performing these job duties as part of her normal work routine with defendant-employer, when she felt and heard a pop in her right knee while attempting to stand from the kneeling position. Plaintiff regularly performed the task of kneeling to assist brides with trying on dresses in the past, and there was no change in this process and performance of plaintiff's job duties on September 26, 2015. Accordingly, the Commission concludes the September 26, 2015, work incident did not constitute an interruption of plaintiff's normal work routine, and plaintiff has failed to demonstrate that her right knee injury occurred "by accident." N.C. Gen. Stat. § 97-2(6) (2017). See also Swindell v. Davis Boat Works, Inc. , 78 N.C. App. 393, 396, 337 S.E.2d 592, 594 (1985) ("There must be some new circumstance not a part of the usual work routine in order to find that an accident has occurred.")
4. To the extent plaintiff contends she incurred her right knee injury"by accident" due to kneeling on one knee, her method of pulling and turning the bride's dress, or the amount of force used, the Commission affords no weight to such contentions and finds plaintiff's descriptions thereof not credible, as plaintiff's early reports of injury did not include these descriptions. ... Additionally, assuming arguendo the foregoing descriptions are credible, plaintiff nonetheless failed to offer testimony to establish that such positioning and methods were unusual, such that they constitute a compensable accident. N.C. Gen. Stat. § 97-2(6) (2017) ; Swindell , 78 N.C. App. at 396, 337 S.E.2d at 594.
Plaintiff argues findings 7, 8, 11, 12, and 39 do not support these conclusions.[6] Importantly, Plaintiff does not challenge these findings as unsupported by competent evidence. Thus, our review is whether the binding findings of fact lead to the conclusions of law the Commission made. Hassell , 362 N.C. at 305, 661 S.E.2d at 714.
We conclude the findings of fact support conclusions of law 3 and 4. The Commission's findings establish Plaintiff, trained as a stylist, fit wedding gowns on brides. For tighter fitting dresses, she may need to kneel or bend to pull the dress down over a bride's hips. Although trained to kneel on both knees, a stylist could, if she desired, kneel only on one knee to try and pull the dress down. On 26 September 2015, Plaintiff fit a mermaid-style dress on a bride. When she experienced difficulty fitting the bride, she kneeled to twist and pull the dress over the bride's hips. She put one foot on the ground and left one knee down to pull up. Plaintiff's testimony, as found by the Commission, did not establish this stance was "unusual." Although she had to twist and pull the dress down, Plaintiff's testimony did not establish the amount of force she used was "unusual." The findings support the Commission's conclusions of law 3 and 4, and Plaintiff's argument is without merit.[7]
V. Conclusion
For the foregoing reasons, we affirm the Opinion and Award by the Commission.
AFFIRMED.
Report per Rule 30(e).
Chief Judge McGEE and Judge HAMPSON concur.

On 7 November 2016, Defendants filed a motion for reconsideration of the deputy commissioner's grant of Plaintiff's motion to suppress. Defendants contended Plaintiff's motion to suppress inaccurately depicted the law and Defendants' duty to disclose. The deputy commissioner denied Defendants' motion for reconsideration.

Also on 14 November 2016, the parties filed a pretrial agreement. The parties stipulated as to the employee-employer relationship, the existence of workers' compensation insurance, and Plaintiff's average weekly wage.

A pulmonary emboli is a blood clot.

We also conclude these findings correctly summarize Plaintiff's testimony at the hearing and statements in her Form 18, recorded statements, and to medical personnel.

Additionally, Plaintiff argues finding of fact 25 contradicts findings of fact 17 and 18. We disagree. As explained supra , prior to filing her Form 18, Plaintiff did not include any allegation that a loss of balance caused her fall. Findings of fact 17 and 18 recap Plaintiff's statement to Dr. Xu and her recorded statement, neither which say she lost her balance.

Those findings state:
7. Only a size 12 dress was available in Oleg Cassini mermaid-style. Because the mermaid-style dress is tight-fitting due to its particular cut, and given the bride's size 16 hip measurement, plaintiff explained to the bride that the dress would not zip up at the top and they would have to clip the dress to her undergarments. Based on the testimony of both plaintiff and store manager Pamela Salter, it is normal practice, when a larger size is needed but unavailable, for the stylist to assist the bride with trying on the smaller-sized dress and clip the dress to the bride's undergarments, rather than trying to zip up the dress. The bride informed plaintiff she wanted to proceed with trying on the size 12 mermaid-style dress.
8. Plaintiff testified before the Deputy Commissioner that she proceeded to fit the mermaid-style dress on the bride, with the gown first falling over the bride's hands, arms, head, shoulders, and bust and stopping at the waist due to the size of the bride's hips. Plaintiff testified that she got down on both knees and began pulling and turning the dress to get it over the bride's hips. Plaintiff testified that, upon realizing the bride was heavier than she initially thought, she needed to readjust her position to pull the dress down onto the bride. Plaintiff testified that she kept her left knee on the floor and placed her right foot on the ground, which she described as an "awkward position;" that she continued to force the dress down over the bride; that while pulling down on the dress, plaintiff pushed up with her right knee; and that while pulling and tugging the dress, she "fell over." Plaintiff testified that, when she fell over, she heard and felt a pop in her knee, along with immediately intense pain.
...
11. After testifying to and demonstrating the movements she alleges to have caused her injury, plaintiff testified she had been trained to be "on both knees" when assisting brides with pulling down dresses. However, plaintiff agreed the assistance could be performed on one knee "(i)f that's the way you desire, but I didn't desire to do it that way." Ms. Salter confirmed that stylists regularly must bend or kneel down on their knees to assist brides trying on dresses.
We omit findings of fact 12 and 39 because they are included supra .

Plaintiff cites to several cases in which our Court held the plaintiffs proved an "injury by accident" because of an interruption of work routine leading to unusual conditions. See Barnette v. Lowe's Home Ctrs., Inc. , 247 N.C. App. 1, 785 S.E.2d 161 (2016) ; Renfro v. Richardson Sports, Ltd. , 172 N.C. App. 176, 616 S.E.2d 317 (2005). These cases do not require us to reverse the Commission because the Commission's binding findings support a conclusion to the contrary of Plaintiff's assertion-there was no interruption of work routine or unusual conditions.